**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ORCA SECURITY LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23-00758-GBW |
| | ) | |
| v. | ) | |
| | ) | |
| WIZ, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS CLAIMS OF INDIRECT AND WILLFUL INFRINGEMENT</u>**

OF COUNSEL:

Jordan R. Jaffe
Catherine Lacey
Callie Davidson
Alex Miller
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000


Dated: September 1, 2023

RICHARDS, LAYTON & FINGER, P.A.
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 658-6541
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Counsel for Defendant Wiz, Inc.*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II.   SUMMARY OF ARGUMENT ..................................................................... 1

III.  STATEMENT OF FACTS ............................................................................ 3

    A.   Wiz is a Leading Cybersecurity Company. ......................................... 3

    B.   The Asserted Patents. .......................................................................... 3

    C.   Defendant's Alleged Knowledge of the Asserted Patents and Allegations Regarding Indirect and Willful Infringement. ......................................... 4

    D.   Plaintiff's Allegations of "Copying" Before the Asserted Patents Issued ............. 5

IV.   LEGAL STANDARD .................................................................................. 7

V.    ARGUMENT .............................................................................................. 7

    A.   Orca Fails to Plausibly Allege Knowledge of the Asserted Patents or Any Purported Infringement Prior to their Issuance or the Filing of the Complaint ................................................................................................. 7

        (1)   Wiz's Prosecution Counsel's Knowledge of Related Patent Applications is Insufficient ............................................................. 8

        (2)   Wiz's Allegedly Tiny Amount of Overlapping Boilerplate Patent Disclosure Does Not Show Knowledge. .................................... 10

        (3)   Orca's Unrelated Pre-Issuance "Copying" Allegations Do Not Show Knowledge. ........................................................................ 12

    B.   Orca Fails to Allege Wiz's Knowledge of the Purported Infringement of the Asserted Patents. ........................................................................... 15

    C.   Orca Cannot Allege Willfulness or Indirect Infringement Based on the Filing of the Complaint. ..................................................................... 17

    D.   Orca Fails to Offer Plausible Allegations Supporting the Other Elements of Its Indirect Infringement Claims .................................................... 18

        (1)   Induced Infringement. ............................................................... 18

        (2)   Contributory Infringement. ....................................................... 20

VI.   CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................2, 7

*Bayer Healthcare LLC v. Baxalta Inc.*,
    989 F.3d 964 (Fed. Cir. 2021)..................................................................7, 8, 16, 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................2, 7, 12

*BillJCo, LLC v. Apple Inc.*,
    583 F. Supp. 3d 769 (W.D. Tex. 2022)..................................................................15

*Boston Sci. Corp. v. Nevro Corp.*,
    560 F. Supp. 3d 837 (D. Del. 2021).......................................................................18

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)..................................................................................................7

*CyWee Grp. Ltd. v. HTC Corp.*,
    312 F. Supp. 3d 974 (W.D. Wash. 2018)...............................................................20

*Deere & Co. v. AGCO Corp.*, No. 18-827,
    2019 WL 668492 (D. Del. Feb. 19, 2019) .......................................................15, 16

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098,
    2018 WL 6629709 (D. Del. Dec. 19, 2018).........................................................19

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)........................................................................18, 19

*Dynamic Data Technologies v. Google LLC*, No. 19-1529,
    2020 WL 1285852 (D. Del. Mar. 18, 2020) .........................................................16

*Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190,
    2020 WL 4192613 (D. Del. July 21, 2020) ..........................................................18

*ESCO Grp. LLC v. Deere & Co.*, No. 20-1679,
    2023 WL 4199413 (D. Del. June 22, 2023)..........................................................18

*Fluidigm Corp. v. IONpath, Inc.*, No. 19-05639,
    2020 WL 408988 (N.D. Cal. Jan. 24, 2020) ........................................................16

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)....................................................................................7

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)................................................................20

*Greatbatch Ltd. v. AVX Corp.*, No. 13-723,
    2016 WL 7217625 (D. Del. Dec. 13, 2016)...........................................15, 16

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    579 U.S. 93 (2016).................................................................................18

*Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792,
    2020 WL 2332045 (D. Del. May 11, 2020).................................................8

*Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792,
    2020 WL 3167641 (D. Del. June 15, 2020).................................................8

*Hutchins v. Zoll Med. Corp.*,
    492 F.3d 1377 (Fed. Cir. 2007)..............................................................15

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..............................................................20

*In re Perle*,
    725 F.3d 1023 (9th Cir. 2013) ...............................................................10

*Iron Oak Techs., LLC v. Dell, Inc.*, No. 17-cv-999,
    2018 WL 1631396 (W.D. Tex. Apr. 4, 2018)..........................................20

*Jackson v. Seaspine Holdings Corp.*, No. 20-1784,
    2022 WL 610703 (D. Del. Feb. 14, 2022)...................................................9

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313,
    2018 WL 834583 (D. Del. Feb. 12, 2018).................................................15

*Maldonado v. Ramirez*,
    757 F.2d 48 (3d. Cir.1985).....................................................................10

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80,
    2014 WL 4652333 (D. Del. Sept. 12, 2014).............................................14

*MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103,
    2021 WL 4685306 (N.D. Cal. Oct. 7, 2021)....................................8, 12, 16

*Maxell Ltd. v. Apple Inc.*, No. 19-CV-00036,
    2019 WL 7905455 (E.D. Tex. Oct. 23, 2019)...........................................8, 9

*Olaf Sööt Design, LLC v. Daktronics Hoist, Inc.*,
    325 F. Supp. 3d 456 (S.D.N.Y. 2018)......................................................10

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
    635 F.3d 539 (Fed. Cir. 2011)..................................................................2

*Parallel Networks Licensing, LLC v. IBM*, No. 13- 2072,
    2017 U.S. Dist. LEXIS 28461 (D. Del. Feb. 22, 2017) ...........................19, 20

*Pontiaki Special Maritime Enter. v. Taleveras Grp.*, No. 16-247,
    2016 WL 4497058 (D. Del. Aug. 26, 2016) ....................................................17

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    29 F. Supp. 3d 455 (D. Del. 2014) ............................................................10

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ......................................................................5

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)....................................................................2

*Software Rsch., Inc. v. Dynatrace LLC*,
    316 F. Supp. 3d 1112 (N.D. Cal. 2018) .......................................................9

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022) .........................................................9

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)...........................................................12, 13

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015).................................................................19

*Välinge Innovation AB v. Halstead N. Eng. Corp.*, No. 16-1082,
    2018 WL 2411218 (D. Del. May 29, 2018) ..................................................15

*Vasudevan Software, Inc. v. TIBCO Software Inc.*, No C 11-06638,
    2012 WL 1831543 (N.D. Cal. May 18, 2012) .................................................9

*VLSI Tech. LLC v. Intel Corp.*, No. 18-966,
    2019 WL 1349468 (D. Del. Mar. 26, 2019) ..................................................18

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
    528 F. Supp. 3d 247 (D. Del. 2021)......................................................17, 18

## STATUTES

35 U.S.C. § 271(c) .................................................................................20

## RULES

Fed. R. Civ. P. 12(b)(6)..............................................................................1

## I.      NATURE AND STAGE OF PROCEEDINGS

On July 12, 2023, Plaintiff Orca Ltd. ("Orca") filed this lawsuit alleging that Wiz, Inc.

("Wiz") directly, indirectly, and willfully infringes U.S. Patent Nos. 11,663,031 (the "'031

patent" (D.I. 1-1, Ex. 1) and 11,663,032 (the "'032 patent") (D.I. 1-1, Ex. 2) (collectively, the

"Asserted Patents").  In its complaint, Orca alleges that Wiz's cybersecurity products, which

provide a constellation of tools and features for managing cloud security, infringe the Asserted

Patents.  Pursuant to Fed. R. Civ. P. 12(b)(6), Wiz moves to dismiss Orca's claims regarding

indirect and willful infringement.

## II.      SUMMARY OF ARGUMENT

Orca's lawsuit is the result of trying and failing to win business in the marketplace

against Wiz.  Apparently left with no better options, Orca has resorted to meritless claims of

patent infringement.  Among other allegations, the Complaint alleges that Wiz's serving coffee

at a conference is alleged evidence of "copying" Orca's patented technology.  Orca has no

conceivable intellectual property rights in serving coffee, nor is it the first company to do so.

Orca's resort to these types of allegations only shows the weakness of its claims.

Along the same lines, Orca alleges that Wiz "copied" its lawyers in support of its

allegations of indirect and willful infringement.  *See* Compl., ¶ 22.  More specifically, Orca

appears to claim that by hiring the same corporate and patent prosecution lawyers, Wiz

somehow "copied" Orca in a manner that is relevant to its claims.  Such allegations make no

sense as lawyers serve multiple clients.  And there are no allegations of misconduct by any

lawyer involved.  Regardless, a reasonable investigation on Orca's part would have revealed

the implausibility of these allegations:  The founders of Wiz used these same attorneys in *2014*

with their prior startup, Adallom Technologies, Ltd. ("Adallom").  This is before Orca even

1

existed or Wiz's founders even allegedly met Orca's founder, Mr. Shua.[1]  Wiz's founders were not copying Mr. Shua or Orca when they hired the same lawyers they had used for their last start-up.  While "copying" an attorney makes little sense, if anyone is "copying" using these attorneys, it is Orca copying the founders of Wiz.  These allegations are insufficient to create any plausible inference of copying relevant to patent infringement under *Iqbal/Twombly*.[2]

Further, the Asserted Patents both issued May 30, 2023, less than two months before Orca filed its Complaint.  None of the alleged "copying" occurred after issuance of the Asserted Patents.  The Complaint alleges no specific facts supporting that Wiz had any knowledge of the Asserted Patents or their alleged infringement ***after issuance***.  Orca provided no notice to Wiz in advance of its lawsuit, including any letter or communication suggesting that any Wiz product infringes any Orca patent, belying its feigned outrage over Wiz's products.  This is fatal to its claims of indirect and willful infringement, which require knowledge of both the asserted patents and infringement.  At best, the Complaint alleges that Wiz was merely aware of the Asserted Patents because Wiz's outside patent prosecution counsel filed earlier patent applications on behalf of Orca.  But those were not even the applications of the Asserted Patents themselves, rendering this allegation insufficient to confer knowledge of the Asserted Patents, let alone knowledge that Wiz's acts constituted infringement.  Not to mention the knowledge of Wiz's outside patent prosecutors acting on

---

[1] Wiz requests that this court take judicial notice of U.S. Patent No. 10,324,702 (*see* Ex. A) which was originally assigned to Adallom and which lists M & B IP Analysts, LLC as attorneys of record.  M&B IP Analysts, LLC is the same firm identified by the Complaint as allegedly "copied" from Orca.  Compl., ¶ 22.  Courts routinely take judicial notice of public filings, including filings from the USPTO.  *See, e.g.*, *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011).  The Court "need not accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotations omitted, citation omitted)).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*").

2

behalf of other clients cannot be imputed to Wiz.  If Orca's novel theory was adopted, it would render every company that hires a patent prosecutor susceptible to indirect and willful infringement claims as a result of their work for other clients.  That is not the law.

In sum, Orca's arguments supporting indirect and willful infringement are fundamentally flawed and should be dismissed.

## III.   STATEMENT OF FACTS

### A.   Wiz is a Leading Cybersecurity Company.

Wiz is one of the leading cloud cybersecurity companies in the world.  Wiz's founders are veterans of Israel's Unit 8200, an elite intelligence division.  The core team has worked together for over 20 years, including as Microsoft's cloud security group leads and as the co-founders of enterprise cybersecurity firm Adallom, which Microsoft acquired for $320 million in 2015.  While at Microsoft, Assaf Rappaport, Wiz's co-founder, was appointed as CEO of one of Microsoft's leading research and development hubs.[3]  Since leaving Microsoft to found Wiz in 2020, Wiz has been recognized as a leader in the field, listed as #15 on Forbes Cloud 100 List and #5 on CNBC's "disruptors" list.[4]  Wiz currently counts over 35% of the Fortune 100 among its customer base.  Beyond offering cloud security products, Wiz researchers have identified and disclosed potential vulnerabilities to significant media attention.[5]

### B.   The Asserted Patents.

Orca accuses certain of Wiz's products of infringing two patents—the '031 patent and the '032 patent.  Both patents issued on May 30, 2023, less than two months before Orca filed

---

[3] https://www.haaretz.com/israel-news/business/2018-01-18/ty-article/microsoft-israels-r-d-center-names-new-34-year-old-ceo/0000017f-dbde-d3a5-af7f-fbfe81c30000.

[4] *See* https://www.forbes.com/lists/cloud100/?sh=6ac926147d9c; https://www.cnbc.com/2023/05/09/these-are-the-2023-cnbc-disruptor-50-companies.html.

[5] *See e.g.,* Ex. B at 1 ("The problem was discovered by outside researchers at the security firm Wiz Inc.")

3

its Complaint in this action.  Compl.; *see also* '031 patent at (45); '032 patent at (45).  The Asserted Patents both claim priority to the same original provisional application filed on January 28, 2019 and are directed at methods of allegedly improving cloud cybersecurity.  *See generally* Compl.; '031 patent; '032 patent.  For the '031 Patent, the Complaint alleges that it improves on prior art techniques by, *inter alia*, "taking at least one snapshot or requesting taking of at least one snapshot of a virtual machine at rest, and analyzing the at least one snapshot to detect vulnerabilities."  Compl., ¶ 37.  For the '032 Patent, the Complaint alleges that it improves on the prior art "by, *inter alia*, accessing the snapshot of at least one virtual disk of a protected virtual cloud asset, analyzing the snapshot of the at least one virtual disk by matching installed applications with applications on a known list of vulnerable applications, and determining, based on the matching, an existence of potential cyber vulnerabilities of the protected virtual cloud asset."  *Id.*, ¶ 66.  The Complaint does not allege that Orca was the first to use snapshots to scan cloud assets such as virtual machines.

### C. Defendant's Alleged Knowledge of the Asserted Patents and Allegations Regarding Indirect and Willful Infringement.

The Complaint includes no specific factual allegations that Wiz was aware of the Asserted Patents after they issued on May 30, 2023, or its alleged infringement.  Instead, the Complaint includes the following paragraph to support Wiz's knowledge of the Asserted Patents and its alleged infringement:

> On information and belief, Wiz monitors Orca's patent portfolio and was aware of the '031 patent and its infringement thereof when the '031 patent issued or soon thereafter at least as a result of its efforts to copy Orca's technology and its patents. For example, Wiz by and through its patent prosecution counsel had knowledge of the '031 patent's parent application, U.S. Patent Application No. 16/750,556, and its provisional application, U.S. Provisional Application No. 62/797,718, because Wiz's patent prosecution counsel is the same lawyer that filed those applications on behalf of Orca. As described above in Paragraph 22, Wiz's patents also include nearly identical figures and descriptions as those found in the '031 patent. In any event, Wiz has had knowledge of the '031 patent and its infringement thereof since at least as early as the filing of this Complaint.

4

Compl., ¶ 58.  This paragraph is representative of Orca's allegations as to Wiz's knowledge for purposes of willful and indirect infringement.  *Id.*, ¶¶ 54, 56, 82, 84, 86 (substantially similar indirect and willfulness allegations for '031 and '032 Patents).

      **D.**    **Plaintiff's Allegations of "Copying" Before the Asserted Patents Issued.**

Earlier allegations in its Complaint make various unsupported claims that Wiz was "copying" Orca before the Asserted Patents issued.  These are either implausible, unsupported, or unrelated to the Asserted Patents.  The lack of substance in these allegations only supports Wiz's lack of alleged knowledge and this motion.

As alleged, Wiz was founded in January 2020 by four individuals who had previously led the cloud security team at Microsoft, which Orca acknowledges is "one of the top providers of cloud computing environments in the world."  Compl., ¶ 12.  In May 2019, Orca's founder allegedly gave a presentation at Microsoft regarding Orca's approach to cloud security; Wiz's founders were allegedly in attendance on behalf of Microsoft.  *Id.*, ¶ 13.  This was four years before the Asserted Patents issued.

Orca purports that industry analysts have "observed" the "wholesale copying" based on graphics attributed to a website, "SOURCEFORGE."  *Id.*, ¶¶ 15-17.  The purported comparison does not include all the different features of Wiz or Orca cataloged on the website, rendering the citation misleading.[6]  Regardless, the purported overlapping features are not alleged as proprietary to Orca, such as "antivirus" or "encryption."  This is akin to saying two cars both

---

[6] Ex. C (Printed version of https://sourceforge.net/software/compare/Orca-Security-vs-Wiz/ as of August 30, 2023, cited in Orca's complaint at paragraph 15).  As it is cited and relied upon by the Complaint, it is properly before the Court on a motion to dismiss.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (A court may consider documents attached to the complaint, "integral to[,] or explicitly relied upon in" the complaint on a motion to dismiss. (citation omitted, emphasis omitted)).

have wheels.  There are no allegations that these purported comparisons support infringement of any Asserted Patent or relate to the Asserted Patents purported "novel" approach.  And the Complaint does not even allege that Orca's own products practice the Asserted Patents.

The Complaint alleges that Wiz copied a handful of common and well-known phrases from Wiz's website, such as the term "full stack" and "heavy lifting."  Compl., ¶¶ 18, 20.  None of these terms are found in the Asserted Patents, and Orca pointedly does not allege any proprietary interest in such common phrases (nor could it).

Orca also alleges that Wiz's use of the same patent lawyer and corporate counsel shows that Wiz attempted to get Orca's attorney's assistance in "pass[ing] off Orca's technology" as its own.  *Id.*, ¶¶ 22-24.  The patent lawyers cited were previously used by Wiz's founders in 2014, years before Orca was founded.  *See supra*, n. 1.  The same is true of the corporate counsel, which also have no alleged relation to the Asserted Patents.  This renders Orca's allegations of "copying" by hiring the same lawyers nonsensical, implausible and irrelevant.

The Complaint alleges that overlap between certain boilerplate description of a figure in the '031 patent in a Wiz patent is "no coincidence."  Compl., ¶ 23.  Orca does not allege that this boilerplate material originated with Orca, and public patent records indicate this is not the case.  *See, e.g.*, Ex. D at [0064]-[0065], Fig. 5 (substantially the same text and figure, published two years prior to the filing of the Asserted Patents).  There are no allegations that the boilerplate description regarding "processing circuitry" relates to any alleged developments that render Orca's Asserted Patents novel over prior art.

Finally, the Complaint asserts as support of alleged "copying" that Wiz and Orca both served coffee at an industry conference. Compl, ¶ 21. Needless to say, this has no relation to the Asserted Patents or any proprietary rights of Orca.[7]

## IV.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice to state a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

## V.    ARGUMENT

### A.    Orca Fails to Plausibly Allege Knowledge of the Asserted Patents or Any Purported Infringement Prior to their Issuance or the Filing of the Complaint.

Induced, contributory, and willful infringement claims all require prior knowledge of the specific asserted patent and alleged infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 638-39 (2015) (holding that liability for induced infringement, like contributory infringement, requires proof that "the defendant knew of the patent" and knew as well that "the induced acts constitute patent infringement"); *Bayer Healthcare LLC v. Baxalta*

---

[7] Orca alleges "on information and belief" that Wiz has hired former Orca employees and has tried to acquire confidential information about Orca using third parties. *Id.*, ¶ 25. This inflammatory and unsupported allegation includes no allegations related to the Asserted Patents, which are public.

*Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("[k]nowledge of the asserted patent[s] and evidence of infringement is necessary … for a finding of willfulness").

The Complaint alleges **no** events that occurred between the issuance of the Asserted Patents and the filing of this lawsuit.  Orca provided no notice to Wiz in advance, including any letter or communication suggesting that any Wiz product infringes any Orca patent.  Orca makes three claims related to Wiz's alleged knowledge of the Asserted Patents, each of which can be readily dismissed.

### (1)    Wiz's Prosecution Counsel's Knowledge of Related Patent Applications is Insufficient.

In paragraph 58, which is representative of Orca's allegations on indirect and willful infringement, Orca's first specific allegation is that Wiz "through its patent prosecution counsel had knowledge of the '031 patent's parent application, U.S. Patent Application No. 16/750,556, and its provisional application, U.S. Provisional Application No. 62/797,718, because Wiz's patent prosecution counsel is the same lawyer that filed those applications on behalf of Orca." Compl., ¶ 58.  This allegation suffers from multiple flaws, any of which render it insufficient to show knowledge of the Asserted Patents.

First, this allegation does not show that Wiz was aware of either Asserted Patent.  It only alleges knowledge of **an application**.  Courts have routinely held that allegations of knowledge of a **patent** cannot be supported by mere knowledge of a **patent application**.  *See, e.g.*, *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792, 2020 WL 2332045, at *3 (D. Del. May 11, 2020) (concluding that a letter identifying the patent application which led to the issuance of the patent in suit did not suffice to establish knowledge of the patent); *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021); *Maxell Ltd. v. Apple Inc.*, No. 19-CV-00036, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019)

("Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later

issued patent"); *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal.

2018) ("A patent application does not provide notice of the resulting patent for indirect or

willful infringement.").  This makes sense, as the nature of the claims change during

prosecution both with amendments and arguments over cited prior art.  These patents bear this

concern out, having changed materially from their initial application to what eventually issued.

*Compare* Ex. E (initial application) *with* '031 patent (issued claims).

The allegations are even weaker here because the purported application Wiz is allegedly

aware of is ***not*** the application for the Asserted Patents, but earlier, related applications.

Compl., ¶ 58.  Courts have rejected attempts by plaintiffs to plead willful infringement on the

basis that the defendant "had knowledge of a patent related to the patent-in-suit."  *Jackson v.

Seaspine Holdings Corp.*, No. 20-1784, 2022 WL 610703, at *5 (D. Del. Feb. 14, 2022); *Sonos,

Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022) ("Mere knowledge of a 'patent

family' or the plaintiff's 'patent portfolio' is not enough.").  "The requisite knowledge of a

patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents,

even if somewhat similar."  *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No C 11-06638,

2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012).

Further, there are no allegations that Wiz ***itself*** knew of the Asserted Patents.  Rather,

the allegation is that Wiz's prosecution counsel knew of a related application by virtue of its

prior representation of Orca, which ended two years before the Asserted Patents issued.

Compl., ¶ 22.  Orca provides no explanation why outside prosecution counsel's knowledge as

to a former client should be imputed to a different client.  As explained by another court:

"Plaintiff has not brought to the Court's attention a single case holding that knowledge from

9

outside legal counsel is imputable to a client corporation for purposes of willful patent infringement.  The Court finds no such cases."  *Olaf Sööt Design, LLC v. Daktronics Hoist, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018).

While other courts have distinguished *Olaf*, counsel for Wiz is aware of no case that suggests imputing knowledge from one former client to another unrelated client is appropriate.[8] *See also ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458-59 (D. Del. 2014) (no pre-suit knowledge where defendants in-house counsel had previously worked for a third-party company that had owned the patents-in-suit).  Indeed, the result of Orca's "knowledge" theory should not be underestimated.  It would create a minefield of knowledge for every prosecution lawyer to navigate based on their prosecution of patents for earlier clients.  Expertise in a field would suddenly become a liability as knowledge of their prior clients' patents could be imputed to their other clients in future patent infringement lawsuits. The law requires no such finding.

> **(2)    Wiz's Allegedly Tiny Amount of Overlapping Boilerplate Patent Disclosure Does Not Show Knowledge.**

Orca alleges that "Wiz's patents also include nearly identical figures and descriptions as those found in the '031 patent."  Compl., ¶ 58 (citing paragraph 22).  Again, this raises no factual basis for knowledge of the Asserted Patents because the cited Wiz patent claims priority to an application filed in 2020.  Compl., ¶ 22 (citing Wiz's U.S. Patent No. 11,374,982, attached as Ex. M and claiming priority to an application filed in 2020).  This is three years

---

[8] *See* Ex. F, *BSD Crown, Ltd. v. Amazon. com, Inc.*, No. 3:23-cv-00057, D.I. 51 (N.D. Cal. Jul. 27, 2023), at 6.  *BSD* dismisses willfulness claims while differentiating *Olaf* based on its procedural posture but quotes *In re Perle* in stating "the Ninth Circuit held that there is no precedent supporting 'imput[ing] to a client knowledge that [its] lawyer gained while representing a different client.'"  *In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) (citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d. Cir. 1985)).

before the Asserted Patents issued and in fact before the specific continuation applications for the Asserted Patents *were even filed*.  Thus, for the same reasons described above, this pre-issuance allegation is insufficient.

Regardless, the alleged overlapping language is not even identical and comprises a tiny amount of boilerplate primarily regarding "processing circuitry."  The Complaint points to twenty lines of text (Compl. ¶ 22), in a patent that spans 24 columns for a total of approximately 1,586 lines of text.[9]  Putting aside that the text is not identical, this amounts to *1%* alleged "overlap."  Looking at the language itself, this generic language is not indicative of any copying of Orca's proprietary technology.  Orca's Figure 3 depicts a basic representation of networked computer components alongside a boilerplate description.  In fact, virtually identical generic figures and descriptions appear in several patents that *pre-date* Orca's patents:



| Orca Patent with earliest priority January 28, 2019 (Compl., ¶ 22) | U.S. Pub. No. 2017/0124622 with priority January 12, 2017 (Ex. D) |
|---|---|

---

[9] The '982 patent includes 22 columns with 67 lines per text each, and two columns of claims with 56 lines of text.  Ex. M.

Ex. D at Fig. 5; *see also* Ex. G, U.S. Pub. No. 2018/0357282 at Fig. 2, [0057]-[0058]; Ex. H, U.S. Pub. No. 2018/0026853 at Fig. 3, [0053]-[0054].  It is not surprising that multiple patent applications in the field of networked computers include similar, even identical, generic diagrams and descriptions of networked computer components.  Similar descriptions appear in many other patent applications, including ones in different fields.  *See* Exs. J-L, Figs. 7, 2 & 1 respectively.  Tiny amounts of common boilerplate disclosure cannot be grounds for claims of copying; these allegations do not rise above speculation.  *Twombly*, 550 U.S. at 555.

> **(3)   Orca's Unrelated Pre-Issuance "Copying" Allegations Do Not Show Knowledge.**

Allegations regarding prosecution lawyers and boilerplate are the only specific allegations included but Orca's Paragraph 58 starts with the following general statement: "On information and belief, Wiz monitors Orca's patent portfolio and was aware of the [Asserted] [P]atent[s] and its infringement thereof when the [Asserted] [P]atent[s] issued or soon thereafter at least as a result of its efforts to copy Orca's technology and its patents."  Compl., ¶¶ 54, 56, 58, 82, 84, 86.

Beyond the two specific allegations addressed above, this appears to be an attempted reference to the earlier "copying" allegations in the Complaint.  None of these allegations relate to conduct that occurred after issuance of the Asserted Patents, rendering them irrelevant.  See *supra*, § A.1 (collecting cases finding pre-issuance knowledge insufficient).  Defendants should not have to "divine[] the eventual issuance of" patents to protect themselves from later claims that they knew their technology would eventually infringe a competitor's patent.

*MasterObjects,* 2021 WL 4685306 at *3; *see also*, *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("Filing an application is no guarantee any patent will issue

and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.").

Even if considered, each allegation does not support knowledge or even the statement in the sentence itself—that Wiz "monitors Orca's patent portfolio and was aware of the [Asserted] [P]atent[s] and its infringement thereof when the [Asserted] [P]atent[s] issued or soon thereafter." Compl., ¶ 58. The implausibility of Orca's claims is best exemplified by its coffee claims, an allegation altogether out of place in a patent infringement suit. *Id.*, ¶ 21. Both Orca and Wiz serving coffee does not raise any plausible inference of "copying" anything related to the Asserted Patents—or anything at all. The other allegations similarly fall flat.

Orca cannot claim Wiz learned of the Asserted Patents in a May 2019 presentation they allegedly attended on behalf of Microsoft *four years* prior to the issuance of either Asserted Patent. *Id.*, ¶ 13. Wiz did not even exist at the time. These allegations do not offer plausible support for Orca's theory of copying. *State Indus.,* 751 F.2d at 1236.

Orca suggests that Wiz "copied" its attorneys by simply hiring some of the same attorneys employed by Orca. Compl., ¶¶ 2, 22, 24. But the Complaint does not provide any factual allegations that Orca established a relationship with these attorneys *before* Wiz's founders.[10] In fact, the founders of Wiz used both attorneys in 2014 with their prior startup, Adallom Technologies, Ltd—again, before Orca even existed or Wiz's founders allegedly met Mr. Shua. *See e.g.*, Ex. A at (71), (74) (originally assigned to Adallom and listing M & B IP Analysts, LLC as attorneys of record). Wiz's founders were not copying Mr. Shua or Orca when they hired the same firm they used before.

---

[10] Wiz does not concede that pre-founding information is relevant, but Orca's complaint itself alleges that conduct by Wiz's founders before Wiz was founded is relevant. Compl., ¶ 13 (allegations regarding meeting between Mr. Shua and founders of Wiz at Microsoft).

To be relevant, there must be a nexus between the alleged copying and the Asserted Patents. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, 2014 WL 4652333, at *1 (D. Del. Sept. 12, 2014) (holding that plaintiff can present evidence of alleged copying only if it "is able to establish a nexus between the evidence of copying and the patents-in-suit," and excluding evidence that did not satisfy that standard). Simply using the same lawyers as another company in the field (and location) is not close to that standard.

The other assertions offered in support of Orca's knowledge allegations are, at best, expected similarities between companies operating in the same industry. The comparisons drawn by analyst reports between the features available from Orca and Wiz, for instance, lend no support to Orca's allegations. The complaint does not allege that any of these features were invented by nor unique to Orca such that Wiz must have copied them. Compl., ¶¶ 15-17. Nor could it. The figures contain references to generic cybersecurity terms and features such as "antivirus," "encryption," "threat intelligence," "incident management," "vulnerability scanning," "prioritization," "risk management," and "web scanning." *Id*. These generic concepts are not indicative of copying. *See Masimo Corp.*, 2014 WL 4652333 at *1.

Similarly, Orca's copying allegations cannot stand on marketing materials' use of similar but commonly used analogies (comparing a computer scan to an MRI) or phrases (stating that their products do the customer's "heavy lifting"). Compl., ¶¶ 19, 20. Other companies have used the MRI analogy to refer to agentless scanning. *See, e.g.*, Ex. I, C. Mellor, "Aptare: Eight exabyte-juggler pimps its 'data centre MRI' product" (2017) (analogizing "agentless data collector" to "MRI scan"). Orca further has no conceivable right

14

to short phrases and buzz words.[11]  Regardless, these allegations do not relate to the purported novel solution claimed in the Asserted Patents.

    None of these allegations show any knowledge of the Asserted Patents nor raise any plausible inference of relevant "copying."  And none support the statement that Wiz "monitors Orca's patent portfolio and was aware of the [Asserted] [P]atent[s] and its infringement thereof when the [Asserted] [P]atent[s] issued or soon thereafter," which is the sole allegation in support of pre-suit knowledge in the Complaint.  Compl., ¶¶ 54, 56, 58, 82, 84, 86.

### B.  Orca Fails to Allege Wiz's Knowledge of the Purported Infringement of the Asserted Patents.

    Even if Wiz had knowledge of the Asserted Patents after their issuance based on Orca's threadbare allegations, "[m]ere knowledge of the Asserted Patents is not enough" to establish knowledge of infringement.  *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777 (W.D. Tex. 2022); *see also Deere & Co. v. AGCO Corp.*, No. 18-827, 2019 WL 668492, at *4 (D. Del. Feb. 19, 2019).  To sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that the defendant "knew, or should have known, that its conduct amounted to infringement of the patent."  *Välinge Innovation AB v. Halstead N. Eng. Corp.*, No. 16-1082, 2018 WL 2411218, at *13 (D. Del. May 29, 2018); *see also Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018) (willful infringement allegations must "permit[] an inference that the defendant was on notice of the potential infringement and still continued. . . ."); *cf. Greatbatch Ltd. v. AVX Corp.*, No. 13-723, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("The key inquiry in this case is whether there is evidence *in addition to AVX's pre-suit knowledge of the patents* that could show that

---

[11] "Copyright does not protect individual words and 'fragmentary' phrases when removed from their form of presentation and compilation."  *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1385 (Fed. Cir. 2007).

AVX's infringement was 'egregious,' 'deliberate,' 'wanton,' or otherwise . . . warrants . . . the 'punitive' sanction of enhanced damages.").

The Complaint does not allege that Wiz ever received notice that its conduct purportedly infringed any of the Asserted Patents.  Nor does it allege that Wiz was given any explanation of "*how* or *why*" its products allegedly infringed any of the Asserted Patents. *MasterObjects*, 2021 WL 4685306 at *5.  In *Dynamic Data Technologies v. Google LLC*, the Court dismissed a plaintiff's claim for willful and indirect infringement because the complaint did "not articulate why, in the absence of having received a pre-suit notice letter explaining why the accused products infringed the patents-in-suit, Google would have nevertheless understood (prior to being served with the Complaint) that such infringement had been occurring" even if it had prior knowledge of the patents-in-suit.  No. 19-1529, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020); *see also Deere*, 2019 WL 668492 at *6 (dismissing claim for willful infringement because the amended complaint did not allege that plaintiff identified the infringing products in communications to the defendant, "let alone explain[] how" they infringed); *Fluidigm Corp. v. IONpath, Inc.*, No. 19-05639, 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020) ("The complaint does not plausibly allege . . . knowledge of *infringement*. . . . [T]he complaint never alleges that the letter accused defendant of infringement, much less detailed *how* defendants allegedly infringed.").  Again, the Asserted Patents issued on May 30, 2023, and the Complaint alleges ***no facts*** that occurred between that date and the less than two months before filing of this lawsuit.   Without such facts, the Complaint does not allege pre-suit infringement for willfulness or indirect infringement.

*Bayer Healthcare* is instructive.  989 F.3d 964.  There the Federal Circuit affirmed the district court's grant of judgment as a matter of law to the defendant on the plaintiff's claim of

willful infringement even though there was "no dispute" that the defendant was aware of the asserted patent and had worked on the same technology that the patent covered.  *Id.* at 987. The plaintiff argued that the defendant must have known it was infringing the asserted patent because the defendant knew about the patent, "consciously redirected its own research to [use the patented technology] after learning about [the plaintiff's] invention," and possessed relevant technical expertise.  *Id.* at 988.  Even accepting the plaintiff's evidence as true and "weighing all inferences in [the plaintiff's] favor," however, this evidence was legally insufficient to establish willful infringement.  *Id.* at 987-88.  Orca's allegations are weaker still where there are no specific allegations of awareness of the Asserted Patents.

Accordingly, Orca's generic, conclusory allegation that Wiz "monitors" Orca's patent portfolio and therefore was "aware" of its alleged infringement as of the issuance of the Asserted Patents should not be credited.  *Pontiaki Special Maritime Enter. v. Taleveras Grp.*, No. 16-247, 2016 WL 4497058, at *3 (D. Del. Aug. 26, 2016) ("A plaintiff may plead based on information and belief . . . so long as there are no boilerplate and conclusory allegations and plaintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.") (citation omitted).

### C.  Orca Cannot Allege Willfulness or Indirect Infringement Based on the Filing of the Complaint.

Attempting to bootstrap its claims, Orca falls back on the argument that Wiz "has knowledge of the [Asserted] [P]atent[s] and its infringement thereof since at least as early as the filing of this Complaint."  Compl., ¶¶ 54, 56, 58, 82, 84, 86.  But courts in this district have found that knowledge and infringement should not be derived from the complaint itself. *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251-52 (D. Del. 2021) (pointing out that "[t]he purpose of a complaint is to obtain relief from an existing claim and

17

not to create a claim" and dismissing claims where knowledge allegations were based on the

original complaint) (citation omitted); *Boston Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837,

845 (D. Del. 2021) (willfulness-based enhanced damages cannot be sustained if "defendant's

alleged knowledge of the asserted patents is based solely on . . . the operative complaint");

*VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019)

(dismissing willfulness-based damages claim where plaintiff alleged that defendant knew of the

asserted patent "at least since the filing of this complaint"); *Dynamic Data Techs., LLC v.*

*Brightcove Inc.*, No. 19-1190, 2020 WL 4192613, at *3 (D. Del. July 21, 2020) (induced

infringement claims dismissed where plaintiff alleged defendant was "aware that its accused

products allegedly infringe as of the filing of the Complaint").

       Wiz recognizes the split in authority on this issue, including in this district.  *See ESCO*

*Grp. LLC v. Deere & Co.*, No. 20-1679, 2023 WL 4199413, at *7-8 (D. Del. June 22, 2023)

(collecting cases and recognizing split in authority).  But the reasoning by *ZapFraud* and other

cases is persuasive, including under the Supreme Court's decision in *Halo Electronics, Inc. v.*

*Pulse Electronics, Inc.*, 579 U.S. 93 (2016).  "The sort of conduct warranting enhanced

damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate,

consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id*. at 103-04.  Wiz

defending itself in the face of a lawsuit does not make it akin to a "pirate."  The contrary rule

allows willful infringement in *every* patent case, which is contrary to *Halo*.

     **D.**    **Orca Fails to Offer Plausible Allegations Supporting the Other Elements of**
         **Its Indirect Infringement Claims.**

      **(1)**    **Induced Infringement.**

       Beyond knowledge and direct infringement, induced infringement requires specific

intent to induce the infringement.  In other words, Orca must allege facts showing that Wiz had

an "intent to encourage" another's infringement, "not merely that [Wiz] had knowledge of the acts alleged to constitute infringement." *DSU Med. Corp. v. JMS Co., Ltd*., 471 F.3d 1293, 1305 (Fed. Cir. 2006).  Other than on "information and belief" and the already discredited knowledge allegations, Orca's induced infringement claim relies entirely on the assertion that Wiz provides "user guides, instructions, sales-related material, and/or other supporting documentation, and by way of advertising, solicitation, and provision of product instruction materials, that instruct its customers on the normal operation of Wiz's CSP in a manner that infringes one or more claims."  Compl., ¶¶ 53-55, 81-83.

But Orca offers no explanation of how the instructions cause customers to infringe. While marketing materials and instructions may serve as the basis for allegations of inducement, "the question is not just whether instructions 'describe[e] the infringing mode,' but whether the 'instructions teach an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent[.]'"  *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) (internal citations omitted).  The allegations do not explain what about Wiz's instructions suggest any affirmative intent to infringe the Asserted Patents.  *Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098, 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) ("Although Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests" intent).  "Merely 'describ[ing]' an infringing mode is not the same as 'recommend[ing],' 'encourag[ing],' or 'promot[ing]' an infringing use[.]"  *Takeda*, 785 F. 3d at 631 (internal citations omitted); *cf. Parallel Networks Licensing, LLC v. IBM*, No. 13- 2072 , 2017 U.S. Dist. LEXIS 28461, at *19-20 (D. Del. Feb. 22, 2017) (granting summary judgment where plaintiff failed to identify any statements

19

recommending the infringing configuration).  Orca's claim for induced infringement cannot survive merely because Wiz provides customers with instructions on the normal operation of its product.  *See, e.g.*, *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 980 (W.D. Wash. 2018) (finding insufficient allegations that defendants "create and disseminate product manuals, instructions, and marketing materials" when the complaint "offers no specific details about those . . . materials" to show that defendants did anything other than "simply describ[e] how the [accused products] work").

### (2)  Contributory Infringement.

Beside showing that the infringing product was "especially made or especially adapted for use in an infringement of such patent," to establish a claim for contributory infringement, a plaintiff must provide factual allegations that the accused product or component "has no substantial noninfringing uses."  35 U.S.C. § 271(c); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  Orca's allegations support neither.  Orca's Complaint offers the conclusory assertion that Wiz's CSP was "adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use."  Compl., ¶ 85.  Similar language has been rejected as a classic "threadbare recital."  *Iron Oak Techs., LLC v. Dell, Inc.*, No. 17-cv-999, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) ("conclusory allegation" that "components provided by" the accused infringer "are not staple articles of commerce suitable for substantial non-[in]fringing use" is "no more than a 'threadbare recital' of one of the elements.").  Orca does not address the relevant inquiry: whether the accused products can be used for purposes other than infringement.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012).

## VI.  CONCLUSION

Orca's claims for indirect and willful infringement should be dismissed.

20

                                          */s/ Frederick L. Cottrell, III*
OF COUNSEL:                               Frederick L. Cottrell, III (#2555)
                                          Kelly E. Farnan (#4395)
Jordan R. Jaffe                           Christine D. Haynes (#4697)
Catherine Lacy                            RICHARDS, LAYTON & FINGER, P.A.
Callie Davidson                           One Rodney Square
Alex Miller                               920 N. King Street
WILSON SONSINI GOODRICH & ROSATI, P.C.    Wilmington, DE 19801
One Market Plaza                          (302) 658-6541
Spear Tower, Suite 3300                   cottrell@rlf.com
San Francisco, CA 94105                   farnan@rlf.com
(415) 947-2000                            haynes@rlf.com

                                          *Counsel for Defendant Wiz, Inc.*

Dated: September 1, 2023