**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ORCA SECURITY LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23-0758-GBW |
| | ) | |
| v. | ) | |
| | ) | |
| WIZ, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

OF COUNSEL:

Jordan R. Jaffe
Catherine Lacey
Callie Davidson
Alex Miller
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Dated: November 1, 2023

RICHARDS, LAYTON & FINGER, P.A.
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 658-6541
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Counsel for Defendant Wiz, Inc.*

## TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II.  SUMMARY OF ARGUMENT ................................................................................... 1

III.  STATEMENT OF FACTS ......................................................................................... 4

    A.  Wiz Is a Leading Cybersecurity Company ...................................................... 4

    B.  The Asserted Patents ....................................................................................... 4

    C.  Defendant's Alleged Knowledge of the Asserted Patents and Allegations Regarding Indirect and Willful Infringement .................................................................... 5

    D.  Plaintiff's Allegations of "Copying" Before the Asserted Patents Issued ........................ 6

IV.  LEGAL STANDARD ............................................................................................. 8

V.  ARGUMENT ......................................................................................................... 8

    A.  Orca Fails to Plausibly Allege Wiz's Knowledge of the Asserted Patents or Purported Infringement Prior to the Issuance or the Filing of the Complaint ..................................... 8

        1. Wiz's Prosecution Counsel's Alleged Knowledge of Related Patent Applications is Insufficient ..................................................................................... 9

        2. Wiz's Alleged Tiny Amount of Overlapping Boilerplate Patent Disclosure Does Not Show Knowledge ..................................................................... 10

        3. Orca's Mid-Litigation "Formal Notice" Letter Does Not Show Knowledge ............. 12

        4. Orca's Unrelated Pre-Issuance "Copying" Allegations Do Not Show Knowledge ... 14

    B.  Orca Fails to Plausibly Allege Wiz's Knowledge of the Purported Infringement of the Asserted Patents ....................................................................................... 16

    C.  Orca Cannot Allege Willfulness or Indirect Infringement Based on the Filing of the Complaint or Amended Complaints ............................................................... 17

    D.  Orca Fails to Plausible Plead Other Elements of Indirect Infringement ......................... 18

        1. Induced Infringement .................................................................... 18

        2. Contributory Infringement ............................................................. 19

VI.  CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................................2, 8

*Bayer Healthcare LLC v. Baxalta Inc.,*
  989 F.3d 964 (Fed. Cir. 2021)........................................................................................8, 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...............................................................................................2, 8, 12

*BillJCo, LLC v. Apple Inc.,*
  583 F. Supp. 3d 769 (W.D. Tex. 2022)..............................................................................16

*Bos. Sci. Corp. v. Nevro Corp.,*
  415 F. Supp. 3d 482 (D. Del. 2019)....................................................................................8

*Boston Sci. Corp. v. Nevro Corp.,*
  560 F. Supp. 3d 837 (D. Del. 2021)..................................................................................17

*Cleveland Medical Devices Inc. v. Resmed Inc.,* No. 22-794,
  2023 WL 6389628 (D. Del. Oct. 2, 2023) .........................................................................17

*Commil USA, LLC v. Cisco Sys., Inc.,*
  575 U.S. 632 (2015)............................................................................................................8

*CyWee Grp. Ltd. v. HTC Corp.,*
  312 F. Supp. 3d 974 (W.D. Wash. 2018)...........................................................................19

*Deere & Co. v. AGCO Corp.,* No. 18-827,
  2019 WL 668492 (D. Del. Feb. 19, 2019) .........................................................................16

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.,* No. 18-098,
  2018 WL 6629709 (D. Del. Dec. 19, 2018).......................................................................19

*DSU Med. Corp. v. JMS Co., Ltd.,*
  471 F.3d 1293 (Fed. Cir. 2006).........................................................................................18

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.,* No. 19-1239,
  2020 WL 4365809 (D. Del. July 30, 2020) .......................................................................17

*Dynamic Data Techs., LLC v. Brightcove Inc.,* No. 19-1190,
  2020 WL 4192613 (D. Del. July 21, 2020) .......................................................................17

*Express Mobile, Inc., v. Squarespace, Inc.,* No. 20-1163,
  2021 WL 3772040 (D. Del. Aug. 25, 2021) ......................................................................13

*Fujitsu Ltd. v. Netgear Inc.,*
  620 F.3d 1321 (Fed. Cir. 2010).........................................................................................19

*Greatbatch Ltd. v. AVX Corp.*, No. 13-723,
    2016 WL 7217625 (D. Del. Dec. 13, 2016)......................................................17

*Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792,
    2020 WL 2332045 (D. Del. May 11, 2020)......................................................10

*Hutchins v. Zoll Med. Corp.*,
    492 F.3d 1377 (Fed. Cir. 2007)......................................................................16

*iFIT Inc. v. Peloton Interactive, Inc.*, No. 21-507,
    2022 WL 609605 (D. Del. Jan. 28, 2022)......................................................18

*In re Perle*,
    725 F.3d 1023 (9th Cir. 2013) .........................................................................9

*Intell. Ventures I LLC v. Toshiba Corp.*,
    66 F. Supp. 3d 495 (D. Del. 2014)...................................................................13

*Iron Oak Techs., LLC v. Dell, Inc.*, No. 17-cv-999,
    2018 WL 1631396 (W.D. Tex. Apr. 4, 2018)...................................................20

*Maldonado v. Ramirez*,
    757 F.2d 48 (3d. Cir. 1985)............................................................................9

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80,
    2014 WL 4652333 (D. Del. Sept. 12, 2014)...................................................15

*MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103,
    2021 WL 4685306 (N.D. Cal. Oct. 7, 2021)..............................................10, 14

*Maxell Ltd. v. Apple Inc.*, No. 19-cv-36,
    2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ................................................10

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052,
    2014 WL 4675316 (D. Del. Sept. 19, 2014)...................................................20

*Olaf Sööt Design, LLC v. Daktronics Hoist, Inc.*,
    325 F. Supp. 3d 456 (S.D.N.Y. 2018)..............................................................9

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
    635 F.3d 539 (Fed. Cir. 2011).........................................................................2

*Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 14-cv-1017,
    2015 WL 1246500 (M.D. Fla. Mar. 16, 2015).................................................13

*Philips N.V. v. ASUSTeK Comput. Inc*, No. 15-1125,
    2016 WL 6246763 (D. Del. Oct. 25, 2016) ....................................................20

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*,
    29 F. Supp. 3d 455 (D. Del. 2014)...................................................................9

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)............................................................................6

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).............................................................................2

*Software Rsch., Inc. v. Dynatrace LLC*,
   316 F. Supp. 3d 1112 (N.D. Cal. 2018) ...........................................................10

*Sonos, Inc. v. Google LLC*,
   591 F. Supp. 3d 638 (N.D. Cal. 2022) ........................................................13, 14

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
   785 F.3d 625 (Fed. Cir. 2015)...........................................................................19

*Välinge Innovation AB v. Halstead N. Eng. Corp.*, No. 16-1082,
   2018 WL 2411218 (D. Del. May 29, 2018)................................................16, 17

*VLSI Tech. LLC v. Intel Corp.*, No. 18-966,
   2019 WL 1349468 (D. Del. Mar. 26, 2019) .....................................................17

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021)..................................................................17

## STATUTES

35 U.S.C. § 271(c) .............................................................................................19

## RULES

Fed. R. Civ. P. 12(b)(6).........................................................................................1

## I.    NATURE AND STAGE OF PROCEEDINGS

On July 12, 2023, Plaintiff Orca Ltd. ("Orca") filed this lawsuit alleging that Wiz, Inc. ("Wiz") directly, indirectly, and willfully infringes U.S. Patent Nos. 11,663,031 (the "'031 patent") (D.I. 1-1, Ex. 1) and 11,663,032 (the "'032 patent") (D.I. 1-1, Ex. 2). *See* D.I. 1, Complaint ("Compl."). On September 1, 2023 Wiz moved to dismiss Orca's claims regarding indirect and willful infringement. *See* D.I. 12, Motion to Dismiss ("Initial MTD"). On September 15, 2023, Orca filed an Amended Complaint adding U.S. Patent Nos. 11,693,685 (the "'685 patent") (D.I. 13-1, Ex. 7), 11,726,809 (the "'809 patent") (D.I. 13-1, Ex. 8), and 11,740,926 (the "'926 patent") (D.I. 13-1, Ex. 9) to its infringement claims. *See* D.I. 13, First Amended Complaint ("FAC"). On October 10, 2023, Orca filed a Second Amended Complaint adding U.S. Patent No. 11,775,326 (the '326 patent") (D.I. 15-1, Ex. 14) to its infringement claims, in addition to the already included '031, '032, '685, '809, and '926 patents (all patents collectively, the "Asserted Patents"). *See* D.I. 15, Second Amended Complaint ("SAC").

In each of its Complaints, Orca alleges that Wiz's cybersecurity products, which provide a variety of tools and features for managing cloud security, infringe the Asserted Patents. Wiz moves to dismiss the claims regarding indirect and willful infringement asserted in Orca's SAC pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    SUMMARY OF ARGUMENT

Orca has now had ***three*** chances to plead its allegations of willful and indirect infringement. Orca's latest approach fares no better than the prior two attempts. This reveals what Orca's lawsuit is really about: creating a baseless narrative to distract from its failures in the marketplace.

Orca's farfetched allegations include claims that Wiz choosing to serve coffee at a conference and using the same lawyer as Orca is somehow evidence of Wiz "copying" Orca's

1

patented technology.  Orca has no conceivable intellectual property rights in serving coffee, nor

is it the first company to do so.  Orca's allegation that Wiz "copied" its intellectual property by

hiring the same corporate and patent prosecution lawyers is just as implausible and irrelevant.

Had Orca conducted a reasonable investigation, it would have discovered the founders of Wiz

first hired the lawyers Orca mentions in connection with their prior startup, Adallom

Technologies, Ltd. ("Adallom"), in 2014—over **5 years before** Orca existed or Wiz's founders

allegedly met Orca's founder, Mr. Shua.[1]  Orca's founders could not have been "copying" Mr.

Shua or Orca when they hired the same lawyers they had previously used.  While "copying" a

lawyer makes little sense, if anyone is "copying" lawyers, it is Orca.  Wiz already pointed out the

implausibility of these allegations in its prior motion to dismiss, but Orca continues to press these

claims in its latest amended complaint without even acknowledging their implausibility.  This

reflects Orca's approach to this case—ignoring the actual facts to try and create a narrative in the

market.  Regardless, allegations of serving coffee or using the same lawyer are insufficient to

create any plausible inference relevant to patent infringement under the *Twomby/Iqbal* standard.[2]

     In its latest attempt, Orca mostly repeats the same insufficient facts it relied on

previously.  It concludes by newly arguing that the "pattern" of implausible or insufficient

allegations is enough to plead willful or indirect infringement.  But combining implausible

---

[1] Wiz repeats its request that this court take judicial notice of U.S. Patent No. 10,324,702 (*see* Ex. A) which was originally assigned to Adallom and which lists M&B IP Analysts, LLC as attorneys of record. M&B IP Analysts is the same firm identified in the SAC as allegedly being "copied" from Orca. SAC, ¶ 23.  Courts routinely take judicial notice of public filings, including filings from the USPTO. *See, e.g., Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011).  The Court "need not accept as true allegations that contradict matters properly subject to judicial notice . . . ." *Secured Mail Sols. LLC v. Universal  Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

allegations does not create any additional facts.  For newly identified patents, Orca relies on a letter it sent to Wiz's outside counsel ***during this litigation and three days*** before filing the FAC. *See* D.I. 15-1, Ex. 10.  Of course, that Orca felt the need to send this letter during the litigation is a recognition that its prior allegations of indirect and willful infringement were insufficient. Regardless, this letter itself does not create claims for willful infringement.  The letter, purporting to provide notice of infringement of patents in the same family with essentially the same claims as those already asserted in this case, provided no real opportunity for Wiz to "cease and desist" infringement as the 300+ pages of correspondence demanded.  Indeed, the letter was sent at 10:21 pm ET and demanded a signed affidavit within 65 hours, on a deadline that coincided precisely with Orca's deadline to respond to Wiz's original motion to dismiss. *See* Ex. N (email with time in PT); D.I. 15-1, Ex. 10.  Orca's transparent attempt to manufacture willfulness allegations mid-litigation should be rejected.

The most important fact here is that Orca failed to provide notice to Wiz ***in advance of filing this lawsuit*** in July 2023 suggesting that any Wiz product infringes any Orca patent.  This is fatal to Orca's claims of indirect and willful infringement, which require knowledge of both the asserted patents and infringement.  At best, Orca alleges that Wiz was aware of the Asserted Patents because Wiz's outside patent prosecution counsel filed earlier patent applications on behalf of Orca.  But those applications were not the same as those of the Asserted Patents, rendering this allegation insufficient to confer knowledge of the Asserted Patents or of infringement.  And knowledge of Wiz's outside patent prosecutors acting on behalf of ***other clients*** cannot be imputed to Wiz.  If it could, every company that hires a patent prosecutor would be susceptible to indirect and willful infringement claims as a result of their work for other clients.  After three attempts at amendment, Orca's claims against Wiz for indirect and

willful infringement should be dismissed.

## III.    STATEMENT OF FACTS

### A.  Wiz Is a Leading Cybersecurity Company

Wiz is one of the leading cloud cybersecurity companies in the world.  Wiz's founders are veterans of Israel's Unit 8200, an elite intelligence division.  The core Wiz team has worked together for over 20 years, including as Microsoft's cloud security group leads and as the co-founders of enterprise cybersecurity firm Adallom, which Microsoft acquired for $320 million in 2015.  While at Microsoft, Wiz's co-founder Assaf Rappaport, was appointed as CEO of one of Microsoft's leading research and development hubs.[3]  Since leaving Microsoft to found Wiz in 2020, Wiz has been recognized as a leader in the field, listed as No. 15 on Forbes Cloud 100 List and No. 5 on CNBC's "disruptors" list.[4]  Wiz currently counts over 35% of the Fortune 100 among its customer base.  Beyond offering cloud security products, Wiz's researchers have identified and disclosed potential vulnerabilities to significant media attention.[5]

### B.  The Asserted Patents

Orca accuses certain of Wiz's products of infringing six patents—the '031, '032, '685, '809, '926, and '326 patents.  The '031 and '032 patents issued on May 30, 2023, less than two months before Orca filed its initial Complaint in this action.  *See* Compl., ¶¶ 34, 63.  The '685 patent issued on July 4, 2023, around a week before the Complaint was filed.  *See* SAC, ¶ 110. The remaining patents issued after the initial Complaint was filed: the '809 patent issued on August 15, 2023, the '926 patent on August 29, 2023, and the '326 patent on October 3, 2023.

---

[3] https://www.haaretz.com/israel-news/business/2018-01-18/ty-article/microsoft-israels-r-d-center-names-new-34-year-old-ceo/0000017f-dbde-d3a5-af7f-fbfe81c30000.
[4] *See* https://www.forbes.com/lists/cloud100/?sh=6ac926147d9c;
https://www.cnbc.com/2023/05/09/these-are-the-2023-cnbc-disruptor-50-companies.html.
[5] *See, e.g.,* Ex. B at 1 ("The problem was discovered by outside researchers at the security firm Wiz Inc.").

*See id.*, ¶¶ 145, 180, 214.  The Asserted Patents all claim priority to the same original provisional application filed on January 28, 2019 and are directed at methods of allegedly improving cloud security. *See generally* SAC; Asserted Patents.

The SAC alleges that the '031 patent improves on prior art techniques by, *inter alia*, "taking at least one snapshot or requesting taking of at least one snapshot of a virtual machine at rest, and analyzing the at least one snapshot to detect vulnerabilities."  SAC, ¶ 40.  The SAC alleges that the '032 patent improves on prior art "by, *inter alia*, accessing the snapshot of at least one virtual disk of a protected virtual cloud asset, analyzing the snapshot of the at least one virtual disk by matching installed applications with applications on a known list of vulnerable applications, and determining, based on the matching, an existence of potential cyber vulnerabilities of the protected virtual cloud asset." *Id.*, ¶ 77.  The SAC allegations for the other Asserted Patents are similar. *See id.*, ¶¶ 113, 148, 183, 217.  Notably, none of the Complaints allege that Orca was the first to use snapshots to scan cloud assets such as virtual machines.

### C.  Defendant's Alleged Knowledge of the Asserted Patents and Allegations Regarding Indirect and Willful Infringement

The SAC does not include sufficient factual allegations that Wiz had prior knowledge of the Asserted Patents or their infringement.  The SAC includes the following claims to support Wiz's alleged knowledge of all the Asserted Patents and their infringement for purposes of willful and indirect infringement: (1) "On information and belief, Wiz monitors Orca's patent portfolio and was aware of the [Asserted Patents] and [their] infringement thereof when the [Asserted] patent issued or soon thereafter at least as a result of its collective pattern of efforts to copy Orca's technology and its patents"; (2) Wiz had knowledge of the Asserted Patents because "Wiz's patent prosecution counsel is the same lawyer that filed those applications on behalf of Orca;" (3) "Wiz's patents also include nearly identical figures and descriptions as those found in

the [Asserted Patents], and, on information and belief, these figures in Wiz's patents were copied from Orca's patents and/or patent applications;" and (4) Wiz had knowledge of the Asserted Patents "since at least as early as the filing" of the Complaints.  *Id.*, ¶¶ 57, 62, 66, 93, 98, 102, 129, 134, 138, 164, 169, 173, 198, 203, 207, 233, 238, 242.

The SAC also alleges that over two months after Orca first filed this lawsuit and ***three days before*** Orca filed the FAC, Orca sent Wiz a letter informing Wiz that it was infringing the '685, '809, and '926 patents and the yet-to-be issued '326 patent.  *See, e.g., id.*, ¶¶ 129, 173, 242. The SAC includes no specific allegations that Wiz was aware of the '031 or '032 patents or their infringement until the Complaint was filed, or the '326 patent or its infringement after it issued.

### D.  Plaintiff's Allegations of "Copying" Before the Asserted Patents Issued

The SAC alleges various unsupported claims that Wiz was "copying" Orca.  The SAC recognizes that Wiz was founded in January 2020 by a team that previously led a team at "Microsoft, one of the top providers of cloud computing environments in the world."  SAC, ¶ 13. In May 2019, Orca's founder allegedly gave a presentation at Microsoft regarding Orca's approach to cloud security, and Wiz's founders were allegedly in attendance on behalf of Microsoft.  *Id.*, ¶ 14.  This was over four years before any of the Asserted Patents issued.

Orca purports that industry analysts have "observed" the "wholesale copying" based on graphics attributed to a website, "SOURCEFORGE."  *Id.*, ¶¶ 16-18.  The alleged comparison does not include all the different features of Wiz or Orca cataloged on the website, rendering the citation misleading.[6]  The SAC does not allege the purported overlapping features such as

---

[6] *See* Ex. C (Printed version of https://sourceforge.net/software/compare/Orca-Security-vs-Wiz/ as of August 30, 2023, cited in Orca's SAC paragraph 16).  Because it is cited and relied upon by the SAC, it is properly before the Court on a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (A court may consider documents attached to the complaint, "integral to[,] or explicitly relied upon in" the complaint on a motion to dismiss. (citation and emphasis omitted)).

"Antivirus" or "Encryption" are proprietary to Orca in any way.  The "overlap" is akin to saying two cars both have wheels.  Orca does not even allege that Orca's own products practice the Asserted Patents.

Orca also alleges that Wiz "copied" a handful of phrases and an analogy from Orca's marketing materials.  Specifically, Orca alleges that Wiz copied an analogy to an "MRI," the use of the phrases "heavy lifting," "full stack;" and "attach path analysis."  SAC, ¶¶ 19-21.  None of these terms are in the Asserted Patents, and Orca does not allege any proprietary interest in such common phrases (nor could it).  Orca points to a technical brief it published in 2020 to argue Wiz "knew or should have known" the technology described in the marketing was patented, but Orca notably does not allege Wiz actually saw this brief.  *Id.*, ¶ 20.  Orca also alleges that Wiz copied Orca sponsoring "a coffee booth" like Orca had at a security conference. *Id.*, ¶ 22.  Needless to say, this has no relation to the Asserted Patents or any of Orca's proprietary rights.

Orca also alleges that Wiz's use of the same patent lawyer and corporate counsel shows that Wiz attempted to get Orca's lawyer's assistance in "pass[ing] off Orca's technology and intellectual property" as its own.  *Id.*, ¶¶ 23-25.  But Orca's patent lawyers were previously used by Wiz's founders in 2014, years before Orca was founded.  The same is true of the corporate counsel, who also have no alleged relation to the Asserted Patents.  Orca similarly alleges that the overlap between certain boilerplate descriptions of a figure in '031 and '032 is "no coincidence"  *Id.*, ¶¶ 23-24.  But Orca does not allege this boilerplate material originated with Orca or relates to any alleged development that renders the Asserted Patents novel over prior art.

Orca finally claims the above allegations show a "pattern [that] leads to the further conclusion, on information and belief, that Wiz monitors virtually every aspect of Orca's

7

business" and then copies "anything it deems would give it an unfair advantage."[7] SAC, ¶ 27.

But merely combining insufficient allegations does not transform them in substance.

## IV.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a "plausible claim for relief."

*Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* at 678.  "Factual allegations must be enough to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 548.  "A complaint must include more than

mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' to

survive a motion to dismiss."  *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 492 (D. Del.

2019) (quoting *Twombly,* 550 U.S. at 555).

## V.   ARGUMENT

### A.   Orca Fails to Plausibly Allege Wiz's Knowledge of the Asserted Patents or Purported Infringement Prior to the Issuance or the Filing of the Complaint

Induced, contributory, and willful infringement claims all require prior knowledge of the

specific asserted patent and alleged infringement.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 575

U.S. 632, 638-39 (2015) (holding that liability for induced infringement, like contributory

infringement, requires proof that "the defendant knew of the patent" and that "the induced acts

constitute patent infringement"); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed.

Cir. 2021) ("[k]nowledge of the asserted patent[s] and evidence of infringement is necessary …

for a finding of willfulness").

---

[7] Orca alleges that "on information and belief, Wiz has hired former Orca employees and worked with third parties to acquire Orca's confidential information . . . and has used that confidential information in furtherance of its collective pattern of efforts to copy and to compete unfairly with Orca."  SAC ¶ 26.  This inflammatory and unsubstantiated allegation includes no facts related to the Asserted Patents, which are publicly available.

### 1. Wiz's Prosecution Counsel's Alleged Knowledge of Related Patent Applications is Insufficient

Orca's allegation that Wiz had knowledge of the Asserted Patents because its prosecution counsel was the same lawyer that filed the parent and provisional applications for Orca's Asserted Patents suffers from multiple flaws, each of which render it insufficient to show knowledge of the Asserted Patents. *See, e.g.*, SAC, ¶ 57.

First, Orca's allegation that Wiz "knowingly copied Orca's patents" through its "prosecuting attorney" (*id.*, ¶ 23) does not state that ***Wiz*** was aware of the Asserted Patents. Orca simply alleges that Wiz's prosecution counsel knew of a related application because of their prior representation of Orca—which ended two years before the Asserted Patents issued. *Id.* And Orca provides no explanation for why outside prosecution counsel's apparent knowledge about a former client should be imputed to a different client. It should not. As one court explained: "Plaintiff has not brought to the Court's attention a single case holding that knowledge from outside legal counsel is imputable to a client corporation for purposes of willful patent infringement. The Court finds no such cases." *Olaf Sööt Design, LLC v. Daktronics Hoist, Inc.*, 325 F. Supp. 3d 456, 464 (S.D.N.Y. 2018). While some courts have distinguished *Olaf*, counsel for Wiz is aware of no case that suggests imputing knowledge from one former client to another unrelated client is appropriate.[8] *See ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458-59 (D. Del. 2014) (no pre-suit knowledge where defendants in-house counsel had previously worked for a company that owned patents-in-suit).

---

[8] *See* Ex. E, *BSD Crown, Ltd. v. Amazon.com, Inc.*, No. 3:23-cv-00057, D.I. 51 (N.D. Cal. Jul. 27, 2023), at 6. *BSD* dismisses willfulness claims while differentiating *Olaf* based on its procedural posture but also quotes *In re Perle*: "the Ninth Circuit held that there is no precedent supporting 'imput[ing]' to a client knowledge that [its] lawyer gained while representing a different client.'" *In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) (citing *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d. Cir. 1985)).

Additionally, the impact of Orca's "knowledge" theory should not be underestimated. Entertaining such a theory would create a minefield of knowledge for every prosecution lawyer to navigate based on their prosecution of patents for other clients. Expertise in a field would suddenly become a liability because knowledge of prior clients' patents could be imputed to other clients in future patent infringement lawsuits. The law does not support such a result.

Second, Orca does not sufficiently allege that the shared lawyers made Wiz aware of any of the Asserted Patents; it merely claims that they made Wiz aware of patent applications. *See, e.g.,* SAC, ¶¶ 57, 62, 93, 129, 233. Courts have routinely held that allegations of ***knowledge of a patent*** cannot be supported by mere ***knowledge of a patent application***. *See, e.g., Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792, 2020 WL 2332045, at *3 (D. Del. May 11, 2020) (concluding that letter identifying patent application which led to issuance of patent in suit was not sufficient to establish knowledge of patent); *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103, 2021 WL 4685306, at *3 (N.D. Cal. Oct. 7, 2021) (same); *Maxell Ltd. v. Apple Inc.*, No. 19-cv-36, 2019 WL 7905455, at *5 (E.D. Tex. Oct. 23, 2019) (same); *Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018) (same). This makes sense because the nature of patent claims change during prosecution both with amendments and arguments over cited prior art. Patents in this case bear this concern out, having changed materially from their initial application to what eventually issued. *Compare, e.g.,* Ex. F (initial application) with '031 patent (issued claims).

### 2. Wiz's Alleged Tiny Amount of Overlapping Boilerplate Patent Disclosure Does Not Show Knowledge

Orca alleges that Wiz had knowledge because "Wiz's patents also include nearly identical figures and descriptions as those found in the [Asserted Patents] and, on information and belief, these figures . . . were copied from Orca's patents and/or patent applications." SAC,

¶¶ 57, 62, 66, 93, 98, 102, 134, 138, 164, 169, 173, 198, 203, 207, 238, 242 (all citing ¶ 23).

This is not sufficient to show knowledge of the Asserted Patents because the Wiz patent Orca points to as the basis of its allegation claims priority to an application filed in 2020—*over three years before* the earliest of the Asserted Patents issued.  *Id.*, ¶ 23 (citing Ex. G, Wiz's U.S. Patent No. 11,374,982, which claims priority to an application filed in 2020).  Thus, for the same reasons described above, this pre-issuance allegation of knowledge is insufficient.

Additionally, the alleged overlapping language is not identical.  It merely includes a small amount of boilerplate language primarily regarding "processing circuitry."  The SAC points to 20 lines of text (SAC, ¶ 23) in a patent that spans 24 columns or approximately 1,586 lines of text.[9]  Even if the text were identical, this amounts to *only 1%* of alleged "overlap."

Regardless, an examination of the generic language shows it is not indicative of any copying of Orca's proprietary technology.  Orca's Figure 3 depicts a basic representation of networked computer components, with a boilerplate description of the same, which also appears in multiple other patent applications in the field of networked computer components.  In fact, virtually identical generic figures and descriptions appear in several patents that *pre-date* Orca's:

---

[9] Wiz's '982 patent includes 22 columns with 67 lines of text per column, and two columns of claims with 56 lines of text.  *See* Ex. G.

| Orca Patent with earliest priority January 28, 2019 (SAC, ¶ 23) | U.S. Pub. No. 2017/0124622 with priority date January 12, 2017 (Ex. D) |
|---|---|
|  FIG. 3 is an example block diagram of the security system **140** according to an embodiment. The security system **140** includes a processing circuitry **310** coupled to a memory **320**, a storage **330**, and a network interface **340**. In an embodiment, the components of the security system **140** may be communicatively connected via a bus **360**.<br><br>The processing circuitry **310** may be realized as one or more hardware logic components and circuits. For example, and without limitation, illustrative types of hardware logic components that can be used include field programmable gate arrays (FPGAs), application-specific integrated circuits (ASICs), application-specific standard products (ASSPs), system-on-a-chip systems (SOCs), general-purpose micro-processors, microcontrollers, digital signal processors (DSPs), and the like, or any other hardware logic components that can perform calculations or other manipulations of information. |  [0064]  FIG. **5** is an example schematic diagram of the visual representation generator **130** according to an embodiment. The visual representation generator **130** includes a processing circuitry **510** coupled to a memory **515**, a storage **520**, and a network interface **530**. In another embodiment, the components of the visual representation generator **130** may be communicatively connected via a bus **540**.<br><br>[0065]  The processing circuitry **510** may be realized as one or more hardware logic components and circuits. For example, and without limitation, illustrative types of hardware logic components that can be used include field pro-grammable gate arrays (FPGAs), application-specific inte-grated circuits (ASICs), Application-specific standard products (ASSPs), system-on-a-chip systems (SOCs), gen-eral-purpose microprocessors, microcontrollers, digital sig-nal processors (DSPs), and the like, or any other hardware logic components that can perform calculations or other manipulations of information. |

*See* Ex. D at Fig. 5; *see also id*, Ex. H at Fig. 2; Ex. I at Fig. 3.

The language Orca points to is so generic that similar descriptions also appear in patent applications in different fields.  *Id.*, Exs. J, Fig. 7; K, Fig. 2; L, Fig. 1.  As such, allegations of a small "overlap" in boilerplate disclosure language does not rise above speculation and cannot be grounds for Wiz having knowledge of or copying Orca's patents.  *See Twombly*, 550 U.S. at 555.

### 3.  Orca's Mid-Litigation "Formal Notice" Letter Does Not Show Knowledge

Wiz explained in its original motion to dismiss why Orca could not plausibly show that Wiz had knowledge of Orca's Asserted Patents or their infringement.  In response, ***two months*** after the litigation started and ***three days*** before Orca's response deadline for Wiz's original motion to dismiss, Orca sent a "formal notice" letter it used to allege Wiz had knowledge of the '685, '809, '926, and '326 patents.  SAC, ¶¶ 129, 164, 198, 233, 242.  The letter requested an

12

affidavit from Wiz that it had "ceased all such infringing activity" in less than 65 hours' time.

D.I. 15-1, Ex. 10 at 1-2.

This transparent attempt to manufacture a willfulness claim midstream is insufficient.

*Sonos, Inc. v. Google LLC* is instructive.  591 F. Supp. 3d 638 (N.D. Cal. 2022).  There, the

plaintiff sent a draft complaint the day before filing suit; then alleged willful infringement based

on the draft complaint.  *Id.* at 646.  The Court held this was insufficient to show knowledge:

> That was not enough time to provide an alleged infringer a meaningful opportunity
> to cease infringing or negotiate a license.  It was not even enough time for counsel
> for the accused infringer to parse through the complaint (here a massive, eight[y]-
> seven-page pleading concerning multiple patents). Sonos has the burden to
> plausibly plead adequate notice was given to assess the allegations of infringement
> in the complaint. Consequently, Sonos has not plausibly alleged Google had the
> requisite knowledge.

*Id.*  The same is true here.  Orca's post-suit letter with a three-day deadline to respond to over

***300 pages*** does not plausibly allege knowledge.  *See Express Mobile, Inc., v. Squarespace, Inc.*,

No. 20-1163, 2021 WL 3772040, at *5 (D. Del. Aug. 25, 2021) (defendant did not plausibly

allege willful infringement where plaintiff filed suit one day after notifying defendant of

infringement); *Intell. Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 500 (D. Del. 2014)

(granting motion to dismiss where plaintiff provided notice of infringement one day before the

complaint was filed); *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 14-cv-1017, 2015 WL

1246500, at *11-12 (M.D. Fla. Mar. 16, 2015) (dismissing infringement claims where court "not

convinced that sending a letter merely one day before filing a lawsuit" constitutes knowledge).

The situation is even more egregious here because there was already pending litigation

between the parties over the same family of patents and essentially the same accused conduct.

Orca's letter omitted any mention of the already asserted '031 and '032 patents, but its response

deadline was purposefully timed to coincide precisely with the deadline to respond to Wiz's

original motion to dismiss claims based on those patents.  There is no doubt the letter was not an

attempt to negotiate a license or cease infringement of any of the Asserted Patents.  Indeed, left unexplained by Orca in the letter was how Wiz could conceivably cease the alleged "infringing activity" when it was essentially the same activity alleged to infringe the '031 and '032 patents already asserted in the pending litigation.  The letter did not serve the purpose of the pre-suit knowledge requirement "to give the alleged infringer a meaningful opportunity to cease infringement or to get a license, all before any lawsuit commences," and thus does not support the requisite knowledge.  *Sonos*, 591 F. Supp. 3d at 643.

### 4.  Orca's Unrelated Pre-Issuance "Copying" Allegations Do Not Show Knowledge

The SAC includes a general statement "[o]n information and belief" claiming Wiz had knowledge of each of the Asserted Patents and its purported infringement because "Wiz monitors Orca's patent portfolio." *See, e.g.,* SAC, ¶¶ 57, 129, 242.  Orca claims that while each of the "examples" it lists "may be explainable as an individual occurrence" the "pattern leads to the further conclusion, on information and belief, that Wiz monitors virtually every aspect of Orca's business."  *Id.*, ¶ 27.

All but one (the letter) of these allegations do not relate to conduct that occurred after issuance of the Asserted Patents, rendering them irrelevant.  *See supra* V.A.1 (collecting cases finding pre-issuance knowledge insufficient); *see also MasterObjects,* 2021 WL 4685306 at *3 (explaining defendants should not have to "divine[] the eventual issuance of" patents to protect themselves from later claims that they knew their technology would eventually infringe).  And, as described above, the letter is not adequate to show knowledge.  *See supra* V.A.3.

Regardless, each allegation individually, and all collectively, do not support knowledge or show that Wiz monitors Orca's portfolio.  To support knowledge, there must be a "nexus between the [alleged] copying and the [Asserted Patents]."  *Masimo Corp. v. Philips Elecs. N.*

14

*Am. Corp.*, No. 09-80, 2014 WL 4652333 (D. Del. Sept. 12, 2014). There is no nexus here.

The implausibility of Orca's claims and lack of nexus between the alleged copying and the Asserted Patents is best exemplified by Orca's claim that Wiz and Orca both served coffee at a conference. SAC, ¶ 22. Such an allegation is out of place in a patent infringement suit and does not raise any plausible inference of "copying" anything related to the Asserted Patents.

The remaining copying allegations similarly lack the required nexus. First, Orca cannot claim that Wiz's "pattern" of copying began when it learned of the Asserted Patents during a May 2019 presentation that they allegedly attended on behalf of Microsoft over **four years prior** to the issuance of any Asserted Patent. *Id.*, ¶¶ 13, 14. Moreover, Wiz did not exist at the time.

Second, Orca cannot claim that Wiz "copied" its lawyers by simply hiring some of the same lawyers employed by Orca. *Id.*, ¶¶ 23-25. The SAC contains no allegation to show Orca had a relationship with these lawyers before Wiz's founders.[10] In fact, Wiz's founders used both lawyers in 2014 in connection with their prior startup, Adallom, before Orca existed or Wiz's founders allegedly met Mr. Shua. *See, e.g.,* Ex. A at (71), (74) (originally assigned to Adallom and listing M & B IP Analysts, LLC as attorneys of record).

Third, the analyst reports showing purported overlap of features between Orca and Wiz do not plausibly evidence copying. The SAC does not allege that any of the listed features were invented by or unique to Orca. Nor could it because the purported overlap consists of conventional cybersecurity terms and features such as "Antivirus," "Encryption," and "Risk Management." SAC, ¶¶ 16, 18. Use of such generic terms is not indicative of copying relevant to willful infringement of the Asserted Patents.

---

[10] Wiz does not concede that pre-founding information is relevant. Wiz addresses this point simply because Orca alleges that conduct by Wiz's founders before Wiz was founded is relevant. SAC, ¶ 14 (allegations regarding Wiz founders and Mr. Shua meeting at Microsoft presentation).

Fourth, Orca cannot claim that Wiz's use of similar and commonly used analogies (comparing a computer scan to an MRI) or phrases (stating that their products do the customer's "heavy lifting") shows copying. *Id.*, ¶¶ 19-21. Orca is not the first or the only company to use the MRI analogy to refer to agentless scanning. *See, e.g.,* Ex. M, (analogizing "agentless data collector" to "MRI scan"). Additionally, Orca does not have a conceivable right to short phrases or buzzwords.[11] Regardless, these phrases are not present in the Asserted Patents or Claims and therefore cannot give rise to relevant alleged copying.

Finally, because none of Orca's individual allegations come close to plausibly showing knowledge or an inference of copying, they cannot be piled into a plausible allegation when considered together. Simply combining nonsensical copying allegations does not demonstrate a "pattern" of copying—it just amounts to combining misleading and irrelevant allegations.

### B. Orca Fails to Plausibly Allege Wiz's Knowledge of the Purported Infringement of the Asserted Patents

Orca has failed to plead the required knowledge of the Asserted Patents, as discussed above. Even so, Orca is required to show more than "[m]ere knowledge of the Asserted Patents" to establish knowledge of infringement. *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777 (W.D. Tex. 2022); *see also Deere & Co. v. AGCO Corp.*, No. 18-827, 2019 WL 668492, at *4 (D. Del. Feb. 19, 2019). To sufficiently plead willful infringement, a plaintiff must also allege facts plausibly showing the defendant "knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation AB v. Halstead N. Eng. Corp.*, No. 16-1082, 2018 WL 2411218, at *13 (D. Del. May 29, 2018). For at least the same reasons Orca has failed to allege knowledge of the Asserted Patents, as discussed above, Orca has failed to allege

---

[11] "Copyright does not protect individual words and 'fragmentary' phrases when removed from their form of presentation and compilation." *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1385 (Fed. Cir. 2007).

knowledge of infringement thereof. *See Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, No. 19-1239, 2020 WL 4365809, at *5 (D. Del. July 30, 2020) (knowledge of infringement cannot be shown through "conclusory statements that merely recite the legal requirements").[12]

### C.   Orca Cannot Allege Willfulness or Indirect Infringement Based on the Filing of the Complaint or Amended Complaints

Orca's attempts to fall back on its complaints for knowledge of the Asserted Patents and infringement are similarly unavailing. *See, e.g.*, SAC, ¶¶ 57, 129, 233,

Courts in this District have found that knowledge and infringement cannot be derived from the complaint itself.[13]  *See, e.g., id.* ("complaint itself cannot serve as the basis for . . . knowledge"); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251-52 (D. Del. 2021) (dismissing claims where knowledge allegations were based on the original complaint) (citation omitted); *Boston Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 845 (D. Del. 2021) (willfulness cannot be sustained if "defendant's alleged knowledge of the asserted patents is based solely on . . . the operative complaint"); *VLSI Tech. LLC v. Intel Corp.*, No. 18-966, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (dismissing willfulness-based damages claim where plaintiff alleged knowledge "at least since the filing of this complaint"); *Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190, 2020 WL 4192613, at *3 (D. Del. July 21, 2020) (infringement claims dismissed where plaintiff alleged knowledge of infringement "as of the filing of the Complaint"). Similarly, courts have found "an amended complaint cannot rely upon

---

[12] Even if Orca had sufficiently shown knowledge of infringement, its willful infringement claim must fail because it has not sufficiently alleged that Wiz engaged in egregious infringement after becoming aware of any infringement. *Greatbatch Ltd. v. AVX Corp.*, No. 13-723, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) (pre-suit knowledge and egregious, deliberate, or wanton infringement required). Merely stating that Wiz's posting of an article and video "demonstrates a conscious disregard of Orca's rights" is not enough. *See, e.g.,* SAC, ¶¶ 61, 140, 202.

[13] Wiz recognizes the split in authority on this issue, including in this District but follows this Court's prior opinion in *Cleveland Medical Devices Inc. v. Resmed Inc.*, No. 22-794, 2023 WL 6389628, at *6 (D. Del. Oct. 2, 2023) (J. Williams).

the original complaint as a basis to allege knowledge for a willful infringement claim." *iFIT Inc.*

*v. Peloton Interactive, Inc.*, No. 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022).

### D.  Orca Fails to Plausible Plead Other Elements of Indirect Infringement

#### 1.  Induced Infringement

In addition to knowledge and direct infringement, to establish a claim for induced

infringement, a plaintiff must show that the defendant had an "intent to encourage" another's

infringement, "not merely that [the defendant] had knowledge of the acts alleged to constitute

infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).  Other

than "on information and belief" and the already discredited knowledge allegations, Orca's

induced infringement claim relies on two assertions:  (1) Wiz provides "user guides, instructions,

sales-related material, and/or other supporting documentation, and by way of advertising,

solicitation, and provision of product instruction materials, that instruct its customers on the

normal operation of Wiz's CSP in a manner that infringes one or more claims" (SAC, ¶¶ 58, 94,

130, 165, 199, 234); and (2) Wiz's "actions since the filing of the Original Complaint" and

"since receiving the [letter]" including Wiz continuing to maintain pages on its website

instructing customers "on how the Wiz CSP can be used to infringe" the Asserted Patents,

posting of a video on August 11, 2023 purportedly "instructing users" about how Wiz functions

"in a manner intended to infringe," and publication of an article on September 28, 2023

purportedly "instructing users how Wiz 'can help organizations' . . . in a manner intended to

infringe." *Id.*, ¶¶ 59-61, 95-97, 131-133, 166-168, 200-202, 235-237.

Besides merely claiming that Wiz's instructions are "intended to infringe," Orca offers no

explanation for how Wiz's instructions ***cause customers to infringe***.  *Id.*  While marketing

materials and instructions may serve as the basis for allegations of inducement, "the question is

not whether the instructions 'describ[e] the infringing mode,' but whether the 'instructions teach

18

an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent[.]'" *Takeda Pharms. U.S.A.*, *Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) (emphasis added)

Orca does not include examples of problematic instructions or otherwise attempt to explain what about Wiz's instructions—regardless of format—suggest any affirmative intent to infringe the Asserted Patents. Orca's claim for induced infringement cannot survive merely because Wiz provides customers with instructions on the normal operation of its products. *See, e.g., Dodots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098, 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (finding insufficient allegations where "Plaintiff cites Defendants' website as support . . . generically and does not identify any particular statement or material that plausibly suggests" intent); *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 980 (W.D. Wash. 2018) (finding insufficient allegations that defendants "create and disseminate product manuals, instructions, and marketing materials" for accused product without more).

## 2. Contributory Infringement

To establish a claim for contributory infringement, a plaintiff must show that the infringing product was "especially made or especially adapted for use in an infringement of such patent" and that the accused product or component "has no substantial noninfringing uses." 35 U.S.C. § 271(c); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Even after being given three opportunities to do so, Orca fails to allege such facts. *See, e.g.,* SAC, ¶¶ 63, 135, 204. Instead, the SAC regurgitates the statutory language for contributory infringement, stating Wiz's CSP was "adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non-infringing use" and "Wiz's CSP, or any further component parts thereof, is not a staple article of commerce and has no substantial non-infringing use." *Id.*, ¶¶ 63-64, 99-100, 135-136, 170-171, 204-205, 239-240. In an attempt to

19

bolster these allegations, Orca simply makes another conclusory allegation: "[o]n information and belief, Wiz's CSP cannot operate without incorporating technology" of the Asserted Patents because its "documentation does not advertise or otherwise suggest that Wiz's CSP is a staple article of commerce or has a substantial non-infringing use." *Id.*, ¶¶ 64, 100, 171, 205, 240.

These conclusory allegations are merely "threadbare recital[s]" that are not sufficient. *See Iron Oak Techs., LLC v. Dell, Inc.*, No. 17-cv-999, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) ("conclusory allegation" that "components provided by" the accused infringer "are not staple articles of commerce suitable for substantial non-[in]fringing use" is "no more than a 'threadbare recital' of one of the elements."). As such, Orca's contributory infringement claim must be dismissed. *See Philips N.V. v. ASUSTeK Comput. Inc*, No. 15-1125, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016) (dismissing contributory infringement claim where complaint "provides no facts supporting the inference that the Accused Functionalities have no substantial non-infringing use beyond the assertion that 'upon information and belief . . . the only use for the [ ] Accused Functionality is infringing the patent' and 'Defendants know' this" (alteration in original)); *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, No. 13-2052, 2014 WL 4675316, at *7 n.8 (D. Del. Sept. 19, 2014) (concluding no contributory infringement where complaint "simply recites [no substantial non-infringing use] element and does no more . . . [and] does not explain how any facts are pleaded that relate to the element").

## VI.   CONCLUSION

For the foregoing reasons, Wiz respectfully requests that Orca's claims for indirect and willful infringement be dismissed.

/s/ Frederick L. Cottrell, III

OF COUNSEL:                                      Frederick L. Cottrell, III (#2555)
                                                Kelly E. Farnan (#4395)
Jordan R. Jaffe                                 Christine D. Haynes (#4697)
Catherine Lacy                                  RICHARDS, LAYTON & FINGER, P.A.
Callie Davidson                                 One Rodney Square
Alex Miller                                     920 N. King Street
WILSON SONSINI GOODRICH & ROSATI, P.C.          Wilmington, DE 19801
One Market Plaza                                (302) 658-6541
Spear Tower, Suite 3300                         cottrell@rlf.com
San Francisco, CA 94105                         farnan@rlf.com
(415) 947-2000                                  haynes@rlf.com

Dated: November 21, 2023                        *Counsel for Defendant Wiz, Inc.*

21