IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORCA SECURITY LTD.,                      )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        C.A. No. 23-758 (JLH)
                                         )
WIZ, INC.,                               )
                                         )
              Defendant.                 )

**ORCA SECURITY LTD.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS WIZ, INC.'S COUNTERCLAIM COUNT IV
UNDER FED. R. CIV. P. 12(b)(6)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff and Counterclaim-
Defendant Orca Security Ltd.*

OF COUNSEL:

Douglas E. Lumish
Lucas Lonergan
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA   94025
(650) 328-4600

Blake R. Davis
Peter Hoffman
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Christopher W. Henry
Kristina D. McKenna
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA  02116
(617) 948-6000

Ryan T. Banks
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626
(714) 540-1235

Gabriel K. Bell
Nicole E. Bruner
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

September 5, 2024

# TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................. 1

III.   STATEMENT OF FACTS .......................................................................... 3

       A.    The '549 Patent ............................................................................ 3

             1.    The '549 Patent Specification .................................................. 3

             2.    The '549 Patent Claims ............................................................ 5

IV.    LEGAL STANDARDS ............................................................................. 6

       A.    Motions To Dismiss Under Rule 12(b)(6) ......................................... 6

       B.    Patent Eligibility Under 35 U.S.C. § 101 .......................................... 6

V.     ARGUMENT .......................................................................................... 7

       A.    *Alice* Step One: The Claims Are Directed to An Abstract Idea .............. 7

             1.    The Independent Claims are Directed to An Abstract Idea ........ 7

             2.    The Dependent Claims Are Equally Abstract ............................ 14

       B.    *Alice* Step Two: The Claims Add Nothing Inventive to the Abstract Idea ........... 15

             1.    The '549 Independent Claims Add Nothing Inventive ............. 15

             2.    The Dependent Claims Add Nothing Inventive ....................... 18

       C.    There Is No Reason to Delay Finding the Claims Ineligible ............... 19

VI.    CONCLUSION ...................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)..............................................................20

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)..............................................................15

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ..........................................................6, 13

*Alice Corp. v. CLS Bank International*,
   573 U.S. 208 (2014).................................................................. *passim*

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)..............................................................18

*Beteiro, LLC v. DraftKings Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) ..................................................6, 7, 16, 20

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)................................................... *passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019)..............................................................20

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019)..............................................................15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019).................................................................8

*Chewy, Inc. v. Int'l Bus. Machines Corp.*,
   94 F.4th 1354 (Fed. Cir. 2024) ......................................12, 15, 17, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)..........................................................15, 19

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
   986 F.3d 1367 (Fed. Cir. 2021)..............................................................15

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020)..............................................................19

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016).................................................................13, 14, 18

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).........................................................................11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020).........................................................................10

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016).............................................................10, 11, 14

*Hyper Search, LLC v. Facebook, Inc.*,
   C.A. No. 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ............................17

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) .......................................................2, 12, 18, 19

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015).............................................................11, 17, 19

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017).........................................................................17

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................. *passim*

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018).........................................................................20

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012)................................................................................6

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP*,
   140 F. Supp. 3d 763 (N.D. Ill. 2015) ...............................................................17

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015).........................................................................15

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ................................................................. *passim*

*Quad City Pat., LLC v. Zoosk, Inc.*,
   498 F. Supp. 3d 1178 (N.D. Cal. 2020) ............................................................17

*Recentive Analytics, Inc. v. Fox Corp.*,
   692 F. Supp. 3d 438 (D. Del. 2023)...................................................................17

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)............................................................................13

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) .........................................................................6, 19

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)................................................................ *passim*

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020)................................................................ *passim*

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019)......................................................................12, 15

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ..................................................................8, 10, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...................................................................7, 13, 18

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019).............................................................................8

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) .........................................................13, 16, 17, 19

*Vehicle Intel. & Safety LLC v. Mercedes-Benz USA, LLC*,
   635 F. App'x 914 (Fed. Cir. 2015) ...................................................................17

## STATUTES

35 U.S.C. § 101.................................................................................................1, 6, 7, 19

## RULES

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 6, 19

## I.        NATURE AND STAGE OF PROCEEDINGS

Plaintiff and Counterclaim-Defendant Orca Security Ltd. ("Orca") alleges that Defendant and Counterclaim-Plaintiff Wiz, Inc. ("Wiz") infringes six patents:  U.S. Patent Nos. 11,663,031, 11,663,032, 11,693,685, 11,726,809, 11,740,926, and 11,775,326.  D.I. 15 (Second Amended Complaint).  On November 21, 2023, Wiz filed a Motion to Dismiss Orca's claims of indirect and willful infringement (D.I. 17, 18), which the Court denied on May 21, 2024.  D.I. 65.  On June 4, 2024, Wiz filed counterclaims, alleging that Orca infringes U.S. Patent Nos. 11,722,554, 11,929,896, 11,936,693, 12,001,549 ("'549 patent"), and 12,003,529.  D.I. 70 at 37-147.  On July 25, 2024, Orca moved to dismiss Counterclaim Count IV under Rule 12(b)(6) because the '549 patent lacks patent-eligible subject matter under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).  D.I. 111.  Wiz then amended its counterclaims ("FACC") on August 22, 2024.  D.I. 124.  But the allegations that Wiz added do not save the '549 patent under § 101.  Therefore, Orca again moves to dismiss Counterclaim IV (FACC ¶¶ 89-124) under § 101.

## II.       SUMMARY OF THE ARGUMENT

1.        The Court should hold that Wiz's '549 patent claims (asserted in Counterclaim Count IV) are ineligible for patent protection under § 101 and grant Orca's motion to dismiss with prejudice.  In *Alice*, the Supreme Court set forth its two-step test for determining whether computer implemented patent claims are eligible under § 101, which is a threshold requirement for any patent suit.  Under *Alice*, computer implemented claims are *in*eligible if they (i) are directed to an abstract idea and (ii) add nothing inventive to that abstract idea.  Wiz's '549 patent claims fail that test.

2.        At *Alice* step one, the claims are directed to the abstract idea of retrieving, contextualizing, querying, and responding to cybersecurity threat information.  The '549 patent addresses a human problem: "an operator will often receive an alert [about a cybersecurity threat]

that lacks context" and "does not … indicate what, if at all, should be done" to respond. '549 patent at 1:51-56. The purported solution is to use existing computer technology—including natural language processing techniques such as a "large language model," or "LLM"—to generate additional context and thereby make it easier to respond. Indeed, Wiz itself alleges that humans can be involved in *every single step* of the claims—a key indication of abstraction. That the claims also recite using existing computer technology, even if applied in a new environment, does not make them less abstract.

3.     At *Alice* step two, the claims add no inventive concept beyond the abstract idea. The specification expressly acknowledges that the claims can be implemented using well-known large language models—like OpenAI's ChatGPT, or Google's BERT. *See, e.g.*, '549 patent at 16:25-26, 10:14-40. The remaining steps, by admission, can be implemented on generic computer components, such as "general-purpose microprocessors" or "any other hardware logic components that can perform calculations." *Id.* at 17:59-18:3; *see also, e.g.*, *id.* at 18:43-45. That is not inventive.

4.     The Federal Circuit has held similar, or even more technological-seeming, claims ineligible as a matter of law, including claims for identifying and responding to risky emails in *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ("*Symantec*"); implementing graphical object-oriented programming in *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) (ineligible claims), analyzing and presenting relevant information in *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022), and implementing a database structure with contextual information in *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018). Wiz's '549 patent claims are likewise ineligible as a matter of law and its Counterclaim IV (FACC ¶¶ 89-124) should be dismissed with prejudice.

## III.    STATEMENT OF FACTS

### A.    The '549 Patent

Wiz filed the '549 patent application on January 31, 2024, five months after Orca brought this suit against Wiz.  The patent issued on June 4, 2024, and Wiz asserted it against Orca that day.

#### 1.    The '549 Patent Specification

The '549 patent specification states that it "relates generally to cybersecurity incident response and specifically to initiating mitigation actions in response to detected cybersecurity threats."  '549 patent at 1:16-18.  The patent explains that in typical "cybersecurity solutions," an "operator" (i.e., a human) would "receive an alert" (an "incident") about a cybersecurity threat (e.g., a message stating that a system has been accessed without authorization) and then query a database or other "structured data" to determine how to respond.  *See id*. at 1:22-56.  But the patent states this process is "not always human-friendly" because it "requires a human to learn a special query language which the machine uses to retrieve and store data."  *Id.* at 1:31-37.  Accordingly, the patent explains that a human can instead use existing techniques to generate natural language "prompts" for known "large language models" (LLMs), to "provide[] accurate translation between a query received in natural language and a database query, in order to provide a user with a relevant result to their query."  *Id.* at 10:14-28; *see id*. at 1:39-43.

However, according to the patent, the problem was "a lack of context": "an operator will often receive an alert that lacks context" and "does not provide a root cause, or indicate what, if at all, should be done to remediate, mitigate, and the like."  *Id.* at 1:51-56.  Then, lacking relevant context, if the operator inputs an ambiguous natural language query (e.g., "what is jay?"), the computer has no way of discerning between different possible meanings and, accordingly, the resulting computer database query will not necessarily produce useful results.  *Id.* at 1:44-49.  The

patent's purported solution, therefore, is to supply additional context so that, when the operator inputs a natural language query (which is converted to a database query) to look up next steps, the resulting information will be more useful.  *See*, *e.g.*, *id.* at 1:44-58, 2:60-65.

The specification acknowledges that no new computer technology is required.  Instead, the patent states that the steps require only generic "hardware, firmware, software, or any combination thereof," *id.* at 18:43-45—for example, "general-purpose microprocessors" or "any other hardware logic components that can perform calculations," *id.* at 17:59-18:3.  At the outset, the purported invention does not describe any new way of identifying security threats; rather, it receives already-identified security information ("incidents") and facilitates the user obtaining additional context to employ in querying a database for potential responses.  And the patent acknowledges that this requires only well-known large language models such as OpenAI's ChatGPT, or Google's BERT, *see, e.g.*, '549 patent at 16:25-26 ("A large language model is, for example, GPT, BERT, and the like."), 10:14-40 (same), and existing tools to convert natural language queries to database queries, *see id.* at 12:13-17 ("natural language processing (NLP) techniques" include known "distance-based Word2Vec"), 1:38-43.  Moreover, the patent states that humans are integral in the purported solution.  For example, the user can retrieve additional context by providing input to match the incident to unspecified "predefined scenarios."  *Id.* at 15:27-40, 16:2, Fig. 6.

In sum, the patent acknowledges that its advance is supplying additional context or "structure" for natural language database queries (*see id.* at 10:10-13, 1:26-37)—*not* a new tool or feature for identifying a security threat, querying a database, or implementing a response.  To facilitate a user's natural language queries, the patent describes using conventional techniques, including large language models, to generate the structured database queries (*id.* at 10:20-28, 12:46-52), and using conventional database technology, such as SQL, to store and retrieve the

data. *Id.* at 1:30-37.  The result of an executed database query can be "provided to … a user," who can initiate mitigation actions. *Id.* at 11:30-39, 17:14-21.  The patent does not purport to invent or improve such technologies; it merely uses them.

### 2.    The '549 Patent Claims

The '549 patent's claims likewise recite no specific technological advances, instead applying conventional LLM technology to common human activity.  Each of the three independent claims (claims 1, 11, and 12) recites basic steps for "providing [a] cybersecurity incident response" by (1) receiving cybersecurity threat information ("an incident"), (2) contextualizing the information using an LLM, (3) querying a cybersecurity database using that context, and (4) initiating a mitigation action.  That is, the claims recite receiving, determining, querying, and responding to cybersecurity information.  Claim 1 is representative:

> 1.   A method for providing cybersecurity incident response, comprising:
>
> receiving an incident input based on a cybersecurity event;
>
> generating a prompt for a large language model (LLM) based on the received incident input;
>
> configuring the LLM to generate an output based on the generated prompt;
>
> mapping the received incident input into a scenario of a plurality of scenarios based on the output of the LLM, wherein each scenario is associated with an incident response;
>
> generating a query based on the received incident input and the mapped scenario;
>
> executing the query on a security database, the security database including a representation of a computing environment;
>
> initiating a mitigation action based on a result of the executed query.

The other two independent claims are materially the same, except they recite a "computer-readable medium" (claim 11) and "system" (claim 12) for performing the same computer functions, with additional generic hardware limitations.  The dependent claims recite incidental limitations, including types of incident inputs (claim 2), LLM usage (claims 3, 4, 5, and 7), user

interface activity (claims 6, 8, and 10), and database storage (claim 9).  *Infra* at 14-15, 18-19.

Dependent claims 13-21 recite the same limitations as claims 2-10.

## IV.    LEGAL STANDARDS

### A.    Motions To Dismiss Under Rule 12(b)(6)

Patent eligibility under § 101 is a threshold issue that "may be, and frequently has been,

resolved on a Rule 12(b)(6)" motion, before formal claim construction or fact development, where

there are no relevant factual disputes.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed.

Cir. 2018); *see, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (Fed. Cir.

2024) (affirming Rule 12(b)(6) dismissal); *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358

(Fed. Cir. 2024) (same); *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023)

(same).  The Court accepts well-pleaded factual allegations but "disregard[s] rote recitals of the

elements of a cause of action, legal conclusions, and mere conclusory statements."  *James v. City

of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citations omitted).  And "'generalized

assertions that factual considerations about the state of the art preclude a decision at the pleadings

stage' do not prevent a district court from granting a motion to dismiss."  *Beteiro*, 104 F.4th at 1358

(citation omitted).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 delineates the categories of patent eligible subject matter, and "contains an

important implicit exception" for abstract ideas—such as mental processes, human activities, or

basic computerized steps—which are not ineligible.  *Alice*, 573 U.S. at 216 (citation omitted).  The

two-step *Alice* framework governs whether computer-based claims are ineligible.  *Id*. at 217-27.

At step one, the Court determines whether the asserted claims are, at root, directed to an

abstract idea notwithstanding the recitation of any computer features.  *Id*. at 218.  If so, at step two,

the Court determines whether the other claim elements, individually or collectively, add "significantly more"—i.e., an "inventive concept"—apart from the abstract idea. *Id*. at 217-22. The claims cannot "simply … implement the abstract idea … on a generic computer." *Id*. at 225. If claims add nothing inventive at step two, they are ineligible under § 101 as a matter of law. *Id*.

At both steps, the eligible subject matter cannot stem from the abstract idea itself. *See Simio*, 983 F.3d at 1365. Automating an idea in a "particular technological environment" with conventional computer technology does not make claims "less abstract" and contributes nothing inventive. *Symantec*, 838 F.3d at 1314 (citation omitted). Nor may claims simply recite "generic functional language to achieve [the] purported solutions" without claiming "how the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted). Indeed, "[c]laims of this nature are almost always found to be ineligible" under § 101. *Beteiro*, 104 F.4th at 1356.

## V.    ARGUMENT

Wiz's '549 patent claims are ineligible under § 101 and *Alice* because they are directed to an abstract idea and add nothing inventive.

### A.    *Alice* Step One: The Claims Are Directed to An Abstract Idea

The claims of the '549 patent are directed to the abstract idea of retrieving, contextualizing, querying, and responding to cybersecurity threat information—activities that humans can perform.

#### 1.    The Independent Claims are Directed to An Abstract Idea

The independent claims recite that abstract idea as a series of basic steps. Claim 1 (which is representative) recites "a method for providing cybersecurity incident response" by: (1) "receiving" information about a cybersecurity threat ("an incident"); (2) determining relevant context by using existing LLMs (i.e., generating a prompt for an LLM based on the incident and using the LLM's output to "map[]" the incident to a "scenario"); (3) querying a cybersecurity

database using that incident/scenario context (i.e., generating and executing a query on a security database that includes "a representation of a computing environment"); and (4) "initiating a mitigation action based on a result of the executed query." '549 patent cl. 1.  Independent claims 11 and 12 are the same but are couched as a computer "medium" and "system" for performing the same steps, which does not change the analysis.  *See Alice*, 573 U.S. at 226 (ineligible system and software claims "no different from the method claims in substance").  Therefore, all independent claims focus on retrieving, contextualizing, querying, and responding to cybersecurity threat information.  The specification confirms those steps are the purported advance.  *See, e.g.*, '549 patent at 1:16-18, 1:22-43, 1:51-58; *see also ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 774 (Fed. Cir. 2019) (specification is useful in identifying purported advance); FACC ¶¶ 10, 90-92.  The claims are directed to an abstract idea for three reasons.

First, the claims are directed to a *human* problem and provide a solution that automates *human* activities—a "telltale sign of abstraction."  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citation omitted); *see also, e.g., PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) ("mere automation of manual processes using generic computers … fails step one") (citation omitted); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co*., 916 F.3d 1363, 1367 (Fed. Cir. 2019) (similar).  As the specification describes, generating database queries was not "human-friendly" and that, although existing natural language processing techniques allowed users to translate natural language into machine language queries, they often lacked relevant context and thus failed to produce relevant responses.  *Supra* at 3-4.  In turn, the patent's purported solution is using generic computers and well-known LLMs to generate relevant context for natural language queries of a cybersecurity database, so that the human operator receives more relevant information to better respond to an incident.  *Id.*  Therefore,

because the claims are rooted in human problems and activities, they are abstract.

The patentee's own statements support that conclusion.  The '549 patent admits that human activity and input is integral to the claim steps: users (humans) can: (1) receive cybersecurity threat information, *see* '549 patent at 1:51-52, 7:30-37; (2) provide input for a natural language query, *id*. at 11:45-47, 12:53-55, "scenario" selections, *id*. at 2:44-45, 2:48-49, 3:52-56, 3:59-61, 4:56-63, 6:11-19, 15:22-40, and "generating a prompt" for the LLM, *id*. at 2:49-50; *see also id*. at 2:52-54, 3:62-66, 4:64-66, 5:5-7, 6:19-23, 6:35-37; (3) query the database, *id*. at 10:14-19; and (4) initiate a response, *see id*. at 17:15-21, 1:51-56.  Likewise, Wiz's counterclaim confirms that human activity is integral to the claim steps: Wiz's allegations depend at every turn on human activities and input.  *See* FACC ¶¶ 112-120 (alleging infringement based on user receiving human-readable alerts; user actions in generating prompts, configuring an LLM by clicking a "toggle" button, mapping scenarios, generating and executing a database query by "click[ing]"; and "allowing users to take remedial steps based on the query results").  Despite Orca making this same argument in its earlier motion to dismiss (D.I. 112 at 9), Wiz did not amend these allegations (or its corresponding infringement contentions) to state otherwise.  *Compare* D.I. 70 ¶¶ 96-104, *with* FACC ¶¶ 112-120.  By the patentee's own admissions, therefore, human activity is integral to the claim limitations.  And automating such steps that involve, or are akin to, human activity does not make the claims "any less abstract."  *Symantec*, 838 F.3d at 1319.

The Federal Circuit has found abstract and ineligible similar claims involving human-performable concepts for processing and responding to data.  For example, in *Symantec*, the claims provided a computer network system for identifying undesirable or risky electronic messages (e.g., spam or viruses) based on their data attributes and taking actions accordingly.  838 F.3d at 1316-17.  The claims recited various computer components for performing those steps, including a

"receipt mechanism," a database of rules, a "rule engine," and a "distribution mechanism." *Id.* at 1317. The court held the claims were akin to a "method of organizing human activity" in a corporate mailroom and thus abstract at step one. *Id.* at 1318; *see also id.* at 1313-16, 1319-20 (holding other computer and security claims abstract). In *PersonalWeb*, the claims recited content-based data processing systems that analyzed data attributes using hash functions and took actions based on those attributes, such as allowing or denying access to the data. 8 F.4th at 1316. The court held that the claim steps were akin to mental concepts performable "using a pencil and paper" and thus abstract. *Id.* at 1316 (citation omitted); *see also Trinity*, 72 F.4th at 1362 (computer claims directed to the abstract idea of "matching based on questioning" because "[a] human mind" could perform similar activities); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (claims for identifying suspicious activity in sensitive medical file); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) (claims for controlling software access). Here, the claims similarly recite steps akin to human activities—retrieving, contextualizing, querying, and responding to threat information—and are, therefore, abstract.

Second, the claims do not purport to provide any specific improvement to computer technology itself. The claims rely on admittedly generic and non-specialized hardware and an existing language model. '549 patent at 17:59-18:37; *supra* at 5. Wiz's counterclaim allegations confirm this. While Wiz characterizes the '549 patent as providing a "technological solution" (FACC ¶ 96), it describes that purported solution as merely applying known artificial intelligence technology to a new environment. *See id.* ¶ 95 (describing alleged improvement as "a specific application of AI—large language models, or LLMs—to cybersecurity incident response, security databases and mitigation actions"); *see also id.* ¶ 103 (describing the purported invention as "the application of LLMs to cybersecurity and incident response"). Wiz concedes that "[t]he asserted

10

claims utilize LLMs"—i.e., what the '549 patent admits was known, conventional technology (*see supra* at 3-4)—"which are then applied" to conventional human incident response steps to "allow[] a user" to respond to various cybersecurity scenarios.  FACC ¶¶ 97, 100 (claims use "a specific type of AI—an LLM"); '549 patent at 16:25-26 (alleged invention uses conventional LLMs).

But "merely implement[ing] an old practice in a new environment" does not make the claims non-abstract.  *FairWarning*, 839 F.3d at 1094.  As in *FairWarning*, the steps Wiz points to as a supposed "technological" solution (*see* FACC ¶¶ 96-99) are the same steps "that humans in analogous situations … have [performed] for decades" and, indeed, steps that Wiz continues to map to human activity (*see* FACC ¶¶ 112-120).  *FairWarning*, 839 F.3d at 1095.  It is the incorporation of those steps on a computer using known LLM technology that purportedly improves the technological process.  *See id.*  Nothing recited in the claims or Wiz's counterclaim allegations "improve the functioning of the computer itself," *Alice*, 573 U.S. at 225, or are "directed to an improvement of an existing technology," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

At most, the claims employ existing technology (e.g., LLMs) to automate the "not always human-friendly" process of creating relevant queries to retrieve useful cybersecurity information.  *See* '549 patent at 1:22-43; *supra* at 3-4.  But a "software brain" that "improve[s] speed or efficiency" does not make the claims non-abstract.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 1371 (Fed. Cir. 2015) ("*Capital One*") (internal quotation marks omitted).  And the Federal Circuit has held that making the *user* more efficient—for example, alleviating the need for technical programming knowledge (in *Simio*) or providing more relevant data (in *IBM* and other cases)—indicates an abstract idea rather than a patent-eligible technological advance.  *See Simio*, 983 F.3d at 1356 (ineligible claims for "making object-oriented

11

simulation easier" without software programming knowledge); *IBM*, 50 F.4th at 1378 (ineligible claims for providing "'humanly comprehensible' amount of information useful for users") (citation omitted); *Chewy, Inc. v. Int'l Bus. Machines Corp*., 94 F.4th 1354, 1366-67 (Fed. Cir. 2024) (ineligible claims for providing relevant search results); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1089, 1093 (Fed. Cir. 2019) (ineligible claims for "assembling data from various sources and processing that data effectively" merely "assist[ed] traders," not improved technology). Likewise, the '549 patent—which purports to improve the "not always human-friendly" process of querying databases by generating additional context to produce more useful results ('549 patent at 1:22-43)—is abstract.

The Federal Circuit's decision in *BSG* is also instructive. 899 F.3d at 1283. There, the patents recited a purportedly improved way for contextualizing database information, guiding the user to input classifications and parameters in performing database queries. *Id.* This "self-evolving" index for organizing database information allowed users to "more finely control their searches for particular data entries by using parameters and values to limit search results." *Id*. at 1283-84. But the court found that the claims were "directed to the abstract idea of considering historical usage information while inputting data" as they required only generic computer processes—the patentee did "not purport to have invented database structures that allow database users to input data as a series of parameters and values" and "the recitation of a database structure slightly more detailed than a generic database [did] not save the asserted claims." *Id*. at 1285-87.

Similarly, here, Wiz's claims, focused on permitting users to more finely access content to inform further action, are directed to abstract ideas and "computers are invoked merely as a tool." *Id*. at 1286 (citation omitted). Indeed, Wiz "does not purport to have invented" any new "database

structures," natural language processing techniques, or LLMs.  *See id.*[1]  Nor can Wiz reasonably deny that its claimed LLMs are known structures.  Indeed, Wiz's own specification "makes clear that such [LLMs] predate the invention."  *Id.*; *see* '549 patent at 16:25-26, 10:14-40.  And the LLM, at most, "similarly provides a generic environment in which the claimed method is performed."  *BSG*, 899 F.3d at 1286-87.

Third, the claims recite basic computerized steps for collecting, analyzing, and presenting information (including from various databases) recited "at a high level of generality"—without any explanation of *how* the system accomplishes its goals—which the Federal Circuit has held abstract.  *See AI Visualize*, 97 F.4th at 1378 ("[T]he steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts" (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (collecting cases))); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("generalized steps to be performed on a computer using conventional computer activity are abstract" (cleaned up) (citations omitted)); *Two-Way Media*, 874 F.3d at 1339 (functional steps are abstract).

For example, in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021), the ineligible claims recited generic (albeit long) computerized steps for collecting user information and using it to allow or disallow transactions "to mitigate information security risks"—using steps such as "receiving," "mapping," "determining," and "accessing" information. The court held that the claims lacked "sufficient specificity to constitute an improvement to computer functionality itself."  *Id.* at 1346.  Likewise, here, Wiz's claims—reciting similar generic steps aimed at "mitigat[ing] information security risks"—are abstract at step one.  *See id.* at 1346, 1350.  That Wiz's claims involve cybersecurity information does not make them non-abstract.  *See*

---

[1]  Even the "security database" to which Wiz points (FACC ¶ 101) is not a new type of database. It is merely a representation of the computing environment.  *Id.*; *see also* '549 patent cl. 1.

*FairWarning*, 839 F.3d at 1097 (reciting "content or source" of information is still abstract).

Wiz's amended counterclaim allegations confirm this.  In purportedly detailing how the claimed system accomplishes its goals, Wiz regurgitates the claim language.  *See* FACC ¶ 100 (claims use an LLM to map received input, associate it with an incident response, query the threat information, and execute the query to initiate a mitigation action).  Nothing in Wiz's allegations or the claim language explains how the LLM (or a user applying the LLM) actually performs the steps of retrieving, contextualizing, querying, and responding to cybersecurity threat information.

### 2.     The Dependent Claims Are Equally Abstract

The dependent claims are focused on the same abstract idea, adding incidental limitations.

<u>First</u>, the dependent claims predominantly recite the type or source of the information that is input to or output from the process.  Claim 2 recites the general content of the "incident input"— "any one of:  a query [and/or] a statement."  *See also* FACC ¶ 102 (confirming that claim 2 merely narrows the type of incident input).  Claims 3 and 5 recite generic data source for training the LLM—"any one of: a data schema … representing the computer environment, incident data [for] a scenario, [and/or] the plurality of scenarios" (claim 3) and queries from a security database (claim 5).  *See id.* (confirming that claims 3 and 5 merely recite how to train the LLM).  Claims 6, 7, and 9-10 recite output content: sub-scenarios (claims 6-7) and a "cybersecurity finding" (claims 9-10).  Claims 4 and 8 recite more of the same: "generating a second prompt for the LLM" (claim 4) and receiving "additional contextual information" about an incident (claim 8).

However, reciting the "type" or "source" of information does not make claims non-abstract.  *See FairWarning*, 839 F.3d at 1097 ("selecting information, by content or source, for collection, analysis, and [display] does nothing significant to differentiate a process from ordinary mental processes"); *Elec. Power*, 830 F.3d at 1353 ("limit[ing] [information] to particular content … does not change its character as information," which "is an intangible") (citations omitted).

14

Indeed, data collection and output amounts to mere data gathering and extra-solution activity, which is abstract.  *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015).

Second, some dependent claims (claims 6, 8, and 10) recite using a graphical "interface" to receive user input.  But the Federal Circuit has repeatedly held that adding a generic "graphical user interface" does not make claims non-abstract or eligible.  *See, e.g.*, *Chewy*, 94 F.4th at 1364-65; *Trading Techs.*, 921 F.3d at 1093; *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1372-75, 1377 (Fed. Cir. 2021); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256, 1258, 1260 (Fed. Cir. 2016).

Third, the remaining dependent claims (claims 13-21) recite the same limitations as claims 2-10.  The analysis for those claims is the same.

Therefore, all dependent claims are "substantially similar and linked to the same abstract idea" as the independent claims, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted)—the abstract idea of retrieving, contextualizing, querying, and responding to cybersecurity threat information.[2]

**B.     *Alice* Step Two: The Claims Add Nothing Inventive to the Abstract Idea**

At *Alice* step two, the Court must determine whether the claims add "significantly more" than the abstract idea—an inventive concept that represents a specific improvement in technology. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019).  Wiz's '549 patent claims do not.

**1.     The '549 Independent Claims Add Nothing Inventive**

The independent claims add nothing inventive.  The patent's purported innovation is providing context for a user querying a cybersecurity database.  *See* '549 patent at 1:38-58; *supra*

---

[2]  For that reason, the Court can find all claims ineligible based on representative claim 1.  *Content Extraction*, 776 F.3d at 1348.  But Wiz's claims are ineligible even considered individually.

at 3.  But providing context—something that humans can do mentally—is part of the abstract idea itself, which "cannot serve as an inventive concept."  *Universal Secure*, 10 F.4th at 1350; *see also, e.g.*, *Simio*, 983 F.3d at 1363 (similar).  Indeed, "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG*, 899 F.3d at 1290-91.  That is the case here.

Beyond the abstract idea, the claims recite only generic computer components—LLM, medium/memory, and processor/device—for performing the generic computer functions.  *See* '549 patent cls. 1, 11, 12.  The specification treats all of those as requiring only known, conventional, off-the-shelf components.  *See, e.g.*, '549 patent at 16:25-26 (explaining that the "large language model" can be, "for example, GPT, BERT, and the like"), 10:14-40 (same); *id.* at 18:23-28 (can use any generic memory or medium for storing data); *id.* at 17:59-18:3, 18:43-45 (using "general-purpose microprocessors" or "any other hardware logic components that can perform calculations" for the claimed steps).  As the Federal Circuit recently reiterated, "[w]here, as here, the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional'" on a motion to dismiss.  *Beteiro*, 104 F.4th at 1358 (citation omitted); *see also SAP*, 898 F.3d at 1168 (claims add nothing inventive where "the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis").  Indeed, "merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."  *PersonalWeb*, 8 F.4th at 1319 ("Relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.") (citation omitted).

These are the same "basic functions of a computer" and "purely functional and generic"

16

components that courts have repeatedly found merely automate abstract ideas in a "particular technological environment"—which adds nothing inventive.  *Alice*, 573 U.S. at 225-26.  For example, the Federal Circuit routinely holds that using computers to retrieve, contextualize, map, or match data; query databases; and perform actions based on the results adds nothing inventive.  *See BSG*, 899 F.3d at 1291 (providing context information for storing data in a "specific database structure[]"); *Trinity*, 72 F.4th at 1366 (retrieving and matching data); *Chewy*, 94 F.4th at 1366-67 (using database functionality); *Intellectual Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1327 (Fed. Cir. 2017) (searching database "by executing the query code using the first XML tag and the first metafile"); *Universal Secure*, 10 F.4th at 1348-49 (mapping data); *PersonalWeb*, 8 F.4th at 1313 (performing actions based on characterizing data); *Symantec*, 838 F.3d at 1313 (same).

That is equally true as to the claims' use of generic artificial intelligence components, such as LLMs or neutral networks.  For example, the Federal Circuit has held that merely reciting a "software brain" for performing an abstract idea adds nothing inventive.  *Capital One*, 792 F.3d at 1371 (internal quotation marks omitted).  Similarly, this Court has held that claims adding generic machine learning, neural networks, and artificial intelligence to be ineligible.  *See Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 449 (D. Del. 2023); *Hyper Search, LLC v. Facebook, Inc.*, C.A. No. 17-1387-CFC-SRF, 2018 WL 6617143, at *10 (D. Del. Dec. 17, 2018).[3]

Even when these basic features are viewed "as an ordered combination" (*see* FACC ¶¶ 103-105), there is no "specific implementation" or "specific improvement" in computer technology

---

[3] *See also*, *e.g.*, *Vehicle Intel. & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 920 (Fed. Cir. 2015) (claims ineligible despite "using an unspecified 'expert system'"); *Quad City Pat., LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1184 (N.D. Cal. 2020) (claims ineligible despite "add[ing] limitations based on artificial intelligence—including prediction of participant behavior and simulation"); *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 773 (N.D. Ill. 2015) (claims ineligible despite reciting "an artificial neural network module" as that was no more than "a central processing unit—a basic computer's brain").

that might provide an inventive concept.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016).[4]  Collectively, "the computer components of [the claimed] method 'add nothing … that is not already present when the steps are considered separately.'"  *Alice*, 573 U.S. at 225 (citation omitted).  The claims' arrangement merely reflects the generic computer functions for performing the abstract idea and "do[es] not, for example, purport to improve the functioning of the computer itself."  *Id*.  Indeed, "it is clear, from the claims themselves and the specification, that these limitations require no improved computer resources [that Wiz] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process."  *SAP*, 898 F.3d at 1169-70.  And the claims also add nothing inventive because they are couched in "result-based functional language" that "does not sufficiently describe how to achieve these results."  *Two-Way Media*, 874 F.3d at 1337 (citation omitted); *see supra* at 5, 13-14.  Therefore, lacking an inventive concept, the claims are ineligible as a matter of law.

## 2. The Dependent Claims Add Nothing Inventive

The dependent claims likewise add nothing inventive.  As discussed, the claims primarily recite the type or source of the input or output information.  *See supra* at 14-15; '549 patent cl. 2 (type of "incident input" information), cl. 3 (source of training information for LLM), cl. 4 (generating second prompt), cl. 5 (source of training information for LLM), cls. 6-7 (sub-scenarios), cl. 8 ("additional contextual information"), cls. 9-10 ("cybersecurity finding"), cls. 13-21 (same limitations as cls. 1-10).  But the Federal Circuit has held that reciting the type or source of information adds nothing inventive.  *See Elec. Power*, 830 F.3d at 1355.  Apart from that, the

---

[4]  Wiz's allegations regarding the "ordered combination" of elements are conclusory and devoid of specific factual assertions, which cannot save Wiz's claims.  *IBM*, 50 F.4th at 1379 ("the district court need not accept a patent owner's conclusory allegations of inventiveness").

claims recite using a graphical user interface, but just as that does not render the claims non-abstract at step one, the Federal Circuit has held it also does not provide anything inventive at step two.  *See, e.g.*, *Chewy*, 94 F.4th at 1364, 1366-68; *Capital One*, 792 F.3d at 1370; *supra* at 15.

### C. There Is No Reason to Delay Finding the Claims Ineligible

Patent-eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion. *SAP*, 989 F.3d at 1166.  That is the proper outcome here, too, as there is no plausible allegation of inventiveness outside the abstract realm, as confirmed by Wiz's amended counterclaim.

As discussed, the patent itself establishes that the claims provide no technological improvement in computer technology—like others that the Federal Circuit found ineligible on the pleadings, *see, e.g.*, *Simio*, 983 F.3d at 1356; *IBM*, 50 F.4th at 1378; *PersonalWeb*, 8 F.4th at 1318, or as a matter of law, *see, e.g.*, *Symantec*, 838 F.3d at 1321; *BSG*, 899 F.3d at 1290-91.  As discussed, the purported advance—providing contextual information for queries to obtain more relevant cybersecurity information—is part of the abstract idea, which cannot provide any inventive concept under § 101.  *See Universal Secure*, 10 F.4th at 1347; *Simio*, 983 F.3d at 1364.  And beyond that, the specification makes clear that the claims require only conventional computer features, not any improved computer technology.  *See supra* at 3-4.  Accordingly, the claims add nothing inventive as a matter of law.

No claim construction could change that conclusion given the patent's admitted focus on providing contextual information for querying a database (part of the abstract idea) and use of generic computer technology.  *See Sanderling.*, 65 F.4th at 703-04 ("court need not engage in claim construction" where claims are ineligible under any "plausible construction[]"); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (construction would not "affect the analysis"); *Content Extraction*, 776 F.3d at 1349 (claims ineligible even construed "favorable to [patentee]").

19

Wiz's amended counterclaim similarly does not preclude dismissal.  Wiz's allegations confirm that, at most, the '549 patent streamlines a human process by applying known AI technology to the cybersecurity and incident response environment.  *See* FACC ¶¶ 97-99, 103. Indeed, even in its *amended* counterclaim, Wiz continues to compare its own asserted claims to actions that are performed by humans and contends that human activity is integral to each limitation in the asserted claims.  *Supra* at 9; FACC ¶¶ 112-120.  And, in any event, "no amount of creative pleading could have succeeded in transforming the claims into patent-eligible subject matter such that [the counterclaim] states a claim on which relief could be granted." *Beteiro*, 104 F.4th at 1358.  Therefore, Wiz's allegations do not—and cannot—"plausibly allege[]" facts showing eligibility.  *SAP*, 898 F.3d at 1163.

In rare cases when the Federal Circuit has found fact issues at step two, the complaints and patents detailed how the claimed features specifically improved computer technology itself, as opposed to merely applying known computer technology in a different technological context.  *See Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed. Cir. 2018).  That is not the case here.

In sum, Wiz's '549 patent itself establishes that the claims do not provide or require any technological improvement and, instead, are rooted in an abstract concept.  The intrinsic record is dispositive and "no disputed facts material to the issue of patent eligibility" preclude resolving the issue at this stage.  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 n.4 (Fed. Cir. 2018). The Federal Circuit found similar claims ineligible as a matter of law in cases such as *Symantec*, *Simio*, *IBM*, and *BSG*.  That is the proper outcome here, too.

## VI.   CONCLUSION

The Court should dismiss Wiz's Counterclaim Count IV with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Douglas E. Lumish
Lucas Lonergan
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Blake R. Davis
Peter Hoffman
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Christopher W. Henry
Kristina D. McKenna
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA  02116
(617) 948-6000

Ryan T. Banks
LATHAM & WATKINS LL,
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626
(714) 540-1235

Gabriel K. Bell
Nicole E. Bruner
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
(202) 637-2200

September 5, 2024

*Attorneys for Plaintiff and Counterclaim-Defendant Orca Security Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 5, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire | *VIA ELECTRONIC MAIL* |
| Kelly E. Farnan, Esquire | |
| Christine D. Haynes, Esquire | |
| RICHARD, LAYTON & FINGER, P.A. | |
| One Rodney Square | |
| 920 North King Street | |
| Wilmington, DE  19801 | |
| *Attorneys for Defendant* | |

| | |
|---|---|
| Jordan R. Jaffe, Esquire | *VIA ELECTRONIC MAIL* |
| Catherine Lacey, Esquire | |
| Callie Davidson, Esquire | |
| Alex Miller, Esquire | |
| WILSON SONSINI GOODRICH & ROSATI, P.C. | |
| One Market Plaza | |
| Spear Tower, Suite 3300 | |
| San Francisco, CA  94105 | |
| *Attorneys for Defendant* | |

| | |
|---|---|
| Praatika Prasad, Esquire | *VIA ELECTRONIC MAIL* |
| WILSON SONSINI GOODRICH & ROSATI, P.C. | |
| 1301 Avenue of the Americas, 40th Floor | |
| New York, NY  10019-6022 | |
| (212) 999-5800 | |
| *Attorneys for Defendant* | |

*/s/ Rodger D. Smith II*

_____
Rodger D. Smith II (#3778)