IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORCA SECURITY LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-758 (JLH) (SRF) |
| | ) |
| WIZ, INC., | ) **REDACTED - PUBLIC VERSION** |
| | ) |
| Defendant. | ) |

**LETTER TO THE HONORABLE SHERRY R. FALLON
FROM RODGER D. SMITH II REGARDING DISCOVERY DISPUTES**

OF COUNSEL:

Douglas E. Lumish
Lucas Lonergan
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Blake R. Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Christopher Henry
Kristina D. McKenna
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA  02116
(617) 948-6000

Original filing date: September 3, 2024
Redacted filing date; September 10, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Plaintiff Orca Security Ltd.*

Dear Judge Fallon:

In connection with the discovery conference scheduled for September 11, 2024, Orca seeks the Court's assistance with the following issues: (1) Wiz's deficient response to Orca's Interrogatory No. 2 and withholding of relevant source code; (2) Wiz's deficient response to Orca's Interrogatory No. 6 and withholding of prior source code versions, git history information, and jira tickets showing the development of the accused functionalities;[1] (3) Wiz's deficient responses to Orca's Second Set of RFPs (Nos. 84-90); and (4) Wiz's refusal to produce documents that hit on Orca's "cloud native" ESI search term.

**Status of Discovery:** This is a patent infringement case between two cloud security unicorns with competing Cloud Native Application Protection Platforms (CNAPPs). Orca asserts six patents against Wiz and its platform, which Orca understands is Wiz's only product. And Wiz asserts five patents against Orca's platform. To date, Orca has produced the entirety of its source code, including prior versions and git history, thousands of technical documents, and over 1.1 million pages of email and slack documents. In contrast, Wiz has repeatedly ignored its discovery obligations and this Court's orders governing discovery, seizing on every possible opportunity for delay. For example, Wiz produced only self-selected portions of source code, stripped of prior versions that would show how Wiz developed the accused functionalities. As another example, Wiz produced a limited collection of technical documents, which likewise fails to adequately show how Wiz developed the accused functionalities and its asserted patents' alleged inventions. As a third example, Wiz produced a mere fraction of ESI discovery responsive to priority custodian search terms (16%), even though the Court ordered Wiz to *substantially complete* that production last month. D.I. 106. Orca regrets that it has had to bring multiple discovery issues before the Court (D.I. 95, 108, 120, 129), but there is no indication Wiz's obstructionist behavior will cease, absent Court intervention.

**Wiz's deficient response to Interrogatory No. 2 and withholding of relevant source code:** Wiz should be ordered to supplement its response to Orca's Interrogatory No. 2 to identify source code modules for the Accused Product's accused functions that implement, use, or relate to agentless scanning identified in Orca's infringement contentions (the "Accused Functionalities"), and make that source code, including all versions of such code, available for inspection.

Orca's Interrogatory No. 2 asks Wiz to identify source code modules used for the Accused Functionalities. Wiz's response invokes Rule 33(d), cites documents that describe, at a high level, that REDACTED and refers to the entirety of "the source code produced by Wiz," without any elaboration. Ex. A at 10-12. Wiz's response is deficient because it neither shows nor confirms that Wiz produced code for the functionalities charted in Orca's infringement contentions. Ex. B at 2-4. And, in correspondence, Orca identified a targeted list of features described in Wiz's documents and charted in Orca's infringement contentions, which it asked Wiz to address in a supplemental response. *Id.* To no avail.

Wiz refuses to provide a complete response to Interrogatory No. 2 because it contends the Court denied Orca's request for "complete source code." D.I. 62. But the Court's earlier order did not

---

[1] Wiz recently supplemented its responses to Interrogatory Nos. 1, 7, and 12, and Orca has removed those interrogatories from this letter.

The Honorable Sherry R. Fallon
September 3, 2024
Page 2

address Interrogatory No. 2, was issued "without prejudice" to subsequent code-related requests, and issued before Wiz asserted its own counterclaims, patents, and allegations of copying, putting the development of its product and alleged inventions at issue. *Id.*; D.I. 124 at Answer ¶¶ 14-16, 19-25; *id.* at Counterclaims ¶¶ 16-28. Further, Orca is not seeking Wiz's "complete source code" (*id.*), or "irrelevant" code unrelated to accused features, as Wiz contends. D.I. 60 at 3. Orca seeks source code relating to Wiz's platform's accused agentless scanning functionality. That this functionality relates to multiple features in Wiz's platform is no surprise—it is the core of Wiz's product (much like Orca's platform's patent-practicing SideScanning™ functionality). That fact does not relieve Wiz of its obligation to answer Orca's discovery requests. Also, in correspondence and meet and confers, Orca repeatedly asked Wiz to identify functions that it contends are ***not*** related to the accused agentless scanning, so Orca could limit its code-related requests to avoid such functions. Ex. C at 21 ("To the extent there are other features that Wiz contends are 'not relevant' to Orca's claims or Wiz's counterclaims, please identify them so that we can consider narrowing our requests to exclude any such allegedly irrelevant features or functionalities."); *id.* at 17 ("If there are other components or services that Wiz contends are not accused by Orca in this case, we ask again that you identify them."); Ex. D at 1-2 (repeating Orca's request that Wiz "identify any specific functionality that is <u>not</u> either accused of infringement or relevant to Wiz's own counterclaims"). Wiz identified two, both of which, contrary to Wiz's claims, are relevant. First, Wiz identified its "Supply Chain Security" (D.I. 60 at 3), a product that Wiz advertises as using "agentless visibility" "to detect vulnerabilities, misconfigurations, and exposed secrets." https://www.wiz.io/solutions/supply-chain-security. That is the Accused Functionality. Second, Wiz identified its "Runtime Sensor," contending that the Runtime Sensor is irrelevant because it is agent-based. Ex. F at 3. But Wiz offers its Runtime Sensor as a feature used with agentless scanning, and Wiz's combination of agentless and agent-based features is within the scope of Orca's claims. For example, Orca charted Wiz's agentless scanning as infringing independent claim 1 of the '326 patent, and Wiz's Runtime Sensor as infringing dependent claim 6. Ex. E at 10-17, 112-115 (Orca's '326 Patent Preliminary Infringement Contentions).

Furthermore, Wiz's representations to the Court that there are many functions in the Accused Product ***not*** related to the Accused Functionalities are contradicted by Wiz's interrogatory responses. Orca's Interrogatory No. 1 asked Wiz to "Identify each Accused Product and component ***related to the Accused Functionalities*** of any Accused Product." Ex. A at 7-9. Wiz's response invokes Rule 33(d), stating "What Wiz understands to be the Accused Product(s) may be found in" WIZ_00032970, which is a document that         REDACTED         . *Id.* at 7-9; Ex. J. Wiz should not be permitted to skirt its obligations to provide complete responses to Orca's interrogatories by telling Orca that every feature in the Accused Product relates to the Accused Functionalities, while telling the Court the opposite.

Orca respectfully requests that Wiz be ordered to identify and produce source code for all Accused Functionalities—e.g., the features that Orca specifically identified in its infringement contentions and May 20 letter (Ex. B at 3-4)—including Wiz's Supply Chain Security feature, Runtime Sensor, and any other features relating to or using Wiz's agentless scanning. *See, e.g.*, *Ameranth, Inc. v. Pizza Hut, Inc.*, 2013 WL 636936, at *7 (S.D. Cal. Feb. 20, 2013) (ordering source code production

The Honorable Sherry R. Fallon
September 3, 2024
Page 3

for functionalities identified in infringement contentions).[2]

**Wiz's deficient response to Interrogatory No. 6 and withholding of relevant documents:** Wiz should be ordered to supplement its response to Orca's Interrogatory No. 6 and produce the documents relating to the Accused Functionalities' development and operation it is withholding.

Orca's Interrogatory No. 6 asks Wiz to describe, *inter alia*, the circumstances surrounding the development of the Accused Functionalities, and to identify the documents pertinent to that development and the people who were involved in same. Wiz's response to Interrogatory No. 6 is deficient because it once again merely invokes Rule 33(d) and then cites documents that fail to provide responsive information. Wiz should be ordered to supplement its response to address these deficiencies and to produce the development-related documents it is obligated to identify, including prior source code versions, git history information, and jira tickets.

*Source code development history:* Wiz should be ordered to produce prior versions of the source code for the Accused Functionalities from 2020 to the present, and the git history for that code. Wiz already produced two versions of its code, one from May 30, 2023, and one from April 22, 2024, which it alleges is the "relevant code." D.I. 60 at 4. But Wiz refuses to produce any other versions or change logs ("git history") for its code, even though git history is stored with code and shows when features and functions were added, modified, or altered, including through engineers' notes and comments. This information is relevant, discoverable, and routinely required to be produced in patent cases involving accused products implemented in source code. *See, e.g., HLFIP Holdings, Inc. v. Rutherford Cnty., Tennessee*, No. 3:19-CV-00714, 2021 WL 6498853, at *6 (M.D. Tenn. Feb. 5, 2021) (ordering production of "source code revision history"). Further, Wiz's git history is of particular importance here because Wiz has failed to produce other documents describing the operation, development, or authorship of its source code. *See* Ex. F at 12-13 (explaining Wiz has produced no documents describing its code); *see also RoboticVISIONTech, Inc. v. ABB Inc.*, C.A. No. 22-1257, D.I. 124 (D. Del. May 6, 2024) at 4 (attached as Ex. K, recognizing "git mirrors [] show the date and person responsible for every change to … code" and thus can "explain the development or authorship of [] source code"). And Wiz put the timing and development of its platform directly at issue with its June 4 answer and counterclaims, including its assertions that Wiz did not engage "in any actionable copying of [Orca]" and that Orca copied Wiz's functionalities dating back to 2021. D.I. 124 at Answer ¶¶ 14-16, 19-25; *id.* at Counterclaims ¶¶ 16-28. Wiz should not be permitted to withhold discovery

---

[2]   In its May 17 Order, the Court indicated that subsequent source code-related requests should address burden and proportionality. D.I. 62. Orca's request is neither burdensome nor disproportionate. Because Wiz must already know what source code relates to the Accused Functionalities, the identification and production of such code should be straightforward. Indeed, Wiz has not articulated any burden to collecting or producing it. The requested discovery is proportional to the needs of this case at least because the amount in controversy is vast, as are Wiz's resources—Wiz's revenue from the Accused Product for 2024 is estimated at over $225 million, Wiz announced earlier this year that it had raised $1 billion in funding, and after that announcement, it was reported that                    REDACTED                     . *See* Fed. R. Civ. P. 26.

The Honorable Sherry R. Fallon
September 3, 2024
Page 4

relevant to the timing of its product development and the parties' claims and defenses. Indeed, Wiz has produced documents indicating Wiz's source code development, including development of the Accused Functionalities, was motivated by copying Orca. *See, e.g.*, WIZ_0005013 (feature request listing REDACTED ); WIZ_0005090 REDACTED ); WIZ_0016844 REDACTED ; WIZ_0018678 (" REDACTED ").

Orca's request also is commensurate with Wiz's demand for "all versions and builds" of Orca's Platform, which Orca already produced. *See* D.I. 58 at 3. And Wiz has not identified any burden with collecting prior source code versions and git history information, and does not dispute that it could be produced using a simple export command. Given Wiz's resources and the stakes of this case, Wiz should produce it. *See supra* at n.2; Fed. R. Civ. P. 26(B)(1).

*Jira tickets:* The Court's May 17 Order ordered Wiz to produce relevant and responsive information from its JIRA database. D.I. 62. On May 24, Wiz produced approximately 11,000 JIRA tickets having the prefix "WZ" followed by a number. Those numbers indicated that there were at least 40,000 JIRA tickets having the same prefix, which appear to evidence Wiz's use of search terms to filter its JIRA ticket results. When Orca asked Wiz to identify such search terms, so Orca could identify additional terms pursuant to paragraph 5.b of the Court's Default Standard for Discovery, Wiz denied that any search terms were used but refused to explain how it arrived at the narrowed set of JIRA tickets it produced. Orca also asked Wiz to confirm it produced all plainly relevant documents, such as ones labeled "Top5-Product_Compete_Orca." Ex. G at 2. Wiz ignored Orca's requests, and Wiz has not produced any additional JIRA tickets.

On August 30, Wiz provided an initial production of emails confirming Orca's suspicion that Wiz is unjustifiably withholding relevant JIRA tickets. For example, one email discusses "REDACTED ," an accused and charted functionality, and refers to a JIRA ticket (WZ-6346), while expressly stating that the " REDACTED " WIZ_0045472. Yet Wiz did not produce this JIRA ticket. Another example is an email referencing unproduced JIRA ticket WZ-4186 and discussing REDACTED another accused functionality. WIZ_0038376 (email referring to WZ-4186). That emails states, REDACTED *Id.* at 3. But again, Wiz has not produced the referenced JIRA ticket. As a third example, Wiz did not produce Jira ticket BESTSE-35, titled "REDACTED ." WIZ_0056835. The email referring to that JIRA ticket indicates that Wiz had prior knowledge of Orca's patents, and Wiz was actively discussing those patents with prospective customers. Wiz cannot withhold such JIRA tickets, or any other JIRA tickets pertaining to the parties' claims and defenses, including Orca's claims of willful infringement and allegations that Wiz copied and built its platform on Orca's patented technologies. Wiz should be ordered to produce all remaining JIRA tickets or, at a minimum, ordered to produce JIRA tickets hitting on ten search terms to be identified by Orca.

**Wiz's Deficient Responses to Request for Production Nos. 84-90:** On March 28, 2024, Orca served a limited set of RFPs directed to Wiz's communications with, valuations of, and potential acquisition, partnership, or collaboration with ThreatOptix. Ex. H. ThreatOptix is a cloud security

The Honorable Sherry R. Fallon
September 3, 2024
Page 5

company that provides functionality expressly integrated into Orca's patent-practicing platform, and Orca is its sole customer. Wiz improperly refuses to produce responsive documents because the technology Orca integrated from ThreatOptix is *agent-based*. As discussed above, however, agent-based technology used with agentless technology, as with ThreatOptix, is directly relevant to Orca's claims. Also, Wiz's valuation of and discussions with ThreatOptix are relevant to damages, e.g., to Wiz's valuation of other cloud security products. *See e.g., E-Contact Techs., LLC v. Apple, Inc.*, No. 1:12-cv-471, 2013 WL 12143967, at *3 (E.D. Tex. Feb. 6, 2013) (finding comparable technology valuation relevant to damages). Wiz's objections also are irreconcilable with its broad discovery requests to Orca. Wiz insists that Orca produce documents relating to *any* cloud security competitor. *See, e.g.*, Wiz RFP No. 54; Ex. F at 3; Ex. C at 2, 4. Although that request is overbroad, by Wiz's own assertions of relevance, Wiz must produce documents relating to ThreatOptix, and Wiz has not identified any burden of collecting or producing such documents.

**Wiz's Refusal to Collect and Produce Documents for the "Cloud Native" Search Term:** Pursuant to the stipulated ESI Agreement (D.I. 71), the parties exchanged Priority ESI Requests for four custodians on June 11, 2024. The only disputed term from that exchange is Wiz's refusal to produce documents responsive to Orca's "cloud native" search term: (((cloud w/5 (native OR security)) OR platform) w/15 (invest* OR profit* OR fund* OR venture OR market* OR demand OR compet* OR financ* OR revenue* OR sale* OR purchase* OR acqui* OR merg* OR cost* OR startup OR project* OR forecast* OR seed OR "series a" OR "series b" OR margin* OR milestone* OR price* OR pricing OR calculat* OR discount*)). This term is directed at the Orca and Wiz Accused Products—which are both CNAPP products—and related financial, investment, and market information about same.

Wiz argues that certain words in the search term relate to potential mergers, acquisitions, or investments that Wiz says are not relevant. Wiz is wrong. Such information is directly relevant to damages, as well as Orca's defenses to any claim of damages based on Wiz's counterclaim patents, because it seeks relevant information about Wiz's financial estimates and the footprint in the marketplace of the intellectual property in dispute. *See Prism Technologies LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1375-76 (Fed. Cir. 2017) ("A patentee must carefully tie proof of real damages to the claimed invention."); *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326-1327 (Fed. Cir. 2014) ("[A] reasonable royalty analysis requires a court to ... carefully tie proof of damages to the claimed invention's footprint in the market place."). Wiz also objects that a 60,000 document hit count from running the "cloud native" search term against four custodians is burdensome. However, during a meet and confer, Wiz agreed that Orca's revisions to the "cloud native" term reasonably reduced the hit counts, such that its sole remaining objection was to relevance. *See* Ex. I at 1-2. Then, two days later, Wiz reversed course, resurrecting its hit count objection. *Id.* But, as Wiz argued to support its overbroad requests hitting on more than 180,000 total documents, "the overall burden of the Requests is the more important consideration" than for individual terms. *Id.* Indeed, one of Wiz's individual search terms had more than 94,000 hits alone, and Wiz's request across all search terms resulted in over 180,000 hits; 30,000 **more** than Orca's search terms. Indeed, even when Orca's "cloud native" term hit count is added to the hit count for all of Orca's search terms, the total hit count for Orca's terms is still lower than the total hit count for Wiz's search terms, which Orca agreed to and applied. *Id.* Wiz should produce documents hitting on Orca's "cloud native" search term.

The Honorable Sherry R. Fallon
September 3, 2024
Page 6

                                            Respectfully,

                                            */s/ Rodger D. Smith II*

                                            Rodger D. Smith II (#3778)

Enclosures
cc:      All Counsel of Record (via electronic mail)