IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ORCA SECURITY LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-758 (JLH) (SRF) |
| | ) | |
| WIZ, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE SHERRY R. FALLON
FROM RODGER D. SMITH II REGARDING DISCOVERY DISPUTES**

OF COUNSEL:

Douglas E. Lumish
Lucas Lonergan
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Blake R. Davis
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Christopher Henry
Kristina D. McKenna
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA  02116
(617) 948-6000

Confidential Version Filed: October 2, 2024
Public Version Filed: October 9, 2024

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff Orca Security Ltd.*

Dear Judge Fallon:

Orca respectfully requests the Court's assistance with the four discovery disputes discussed below.

**Wiz's deficient production of responsive ESI from Priority custodians in violation of the ESI Order:** Discovery of electronic correspondence, including email and slack messages, is governed by D.I. 71 ("ESI Order"), which states that the parties' general production requests under Fed. R. Civ. P. 34 and 45 "shall not include email or other forms of electronic correspondence," and "[t]o obtain Electronic Correspondence, parties must propound specific Electronic Correspondence production requests." *Id.* at 3. Electronic Correspondence requests identify "the custodian, search terms, and time frame," and the parties must "cooperate to identify the proper custodians, proper search terms and proper timeframe." *Id.* The ESI Order states "the parties will have substantially completed production of all non-privileged custodial ESI responsive to the parties' Priority Requests" by August 30, 2024. D.I. 71 at 6; D.I. 106 (extending deadline to August 30).

Over several weeks, the Parties engaged in vigorous negotiations resulting in a mutually agreed-upon set of search terms, custodians, and time frames for four priority custodians per party ("Priority Requests"). The parties each proposed initial search terms, exchanged objections, and following multiple verbal meet and confers and dozens of emails, the parties agreed to a set of unobjected to search terms for priority custodians. Ex. 1 at 1. The final agreed search terms resulted in ~180,000 unique responsive documents that Orca would produce across custodians, and ~110,000 unique responsive documents that Wiz would produce. On the August 30 substantial completion deadline, Orca produced over 90% of the documents (~163,000) responsive to the parties' agreed search terms, only withholding documents flagged for privilege. In contrast, Wiz produced just ~22% of its responsive documents (~25,000 of ~110,000 total). Orca immediately asked Wiz to explain its noncompliance with the substantial completion deadline; Wiz responded it withheld most of the documents hitting on agreed search terms as "not responsive." Ex. 2 at 2.

Orca has repeatedly raised its concerns over Wiz's unilateral refusal to produce all non-privileged documents that hit upon the agreed search terms. *See* D.I. 147; Ex. 2 at 1-3; Ex. 3 at 1-4; Ex. 4 at 2; *see also* D.I. 148. For three weeks, Wiz refused to meet and confer with Orca regarding this issue, alleging only one attorney could speak to the issue, and that that one attorney was unavailable.[1] Ex. 2 at 1-2; Ex. 3 at 1, 3; Ex. 4 at 2. When that attorney finally met with Orca's counsel, Wiz refused to explain the parameters of its "responsiveness" review process. When Orca raised the issue again on September 30, Wiz again refused to describe its review process other than it was on a "document by document" basis. Ex. 15 at 3-4. Wiz should not be permitted to withhold documents it unilaterally decides are unimportant. Wiz should produce all non-privileged documents hitting on agreed search terms, as the parties negotiated and the ESI Order requires.

Wiz alleges its "responsiveness" filtering is permitted for three reasons. Each should be rejected.

---

[1] Discovery has been repeatedly frustrated by this tactic. *See, e.g.*, Ex. 9 at 15 (noting the parties "cannot continue discovery with meet and confers such as on July 9 and August 2 where Wiz's counsel were unable to commit to any positions or dates certain without further conferring with other members of Wiz's team" and requesting "someone with decision-making authority will attend" M&Cs); *id.* at 9 ("[P]lease investigate these issues **before** the meet and confer and include someone with decision making authority on the meet and confer").

First, Wiz alleges the ESI Order does not expressly prohibit a unilateral so-called relevance review. That is wrong. The ESI Order permits withholding on the basis of privilege, but "*all* non-privileged custodial ESI responsive to the parties' Priority Requests," i.e., responsive to agreed search terms, must be produced. D.I. 71 at 6. Producing all non-privileged documents hitting on agreed search terms is a neutral and fair way to proceed, unlike Wiz withholding documents it unilaterally decides are not relevant. Indeed, Wiz's relevance determinations have already caused several issues requiring the Court's intervention, such as Wiz's JIRA tickets, which the Court resolved with search terms. *See, e.g.*, D.I. 133 at 4 (Orca explaining Wiz's withholding of relevant JIRA tickets); D.I. 139 (ordering mutual exchange of search terms to resolve issue). Whereas search terms act as a neutral proxy for relevance, that is not the case if Wiz is permitted to misinterpret the ESI Order (and D.I. 139) as permitting Wiz to continue withholding documents it unilaterally decides are not relevant. And to be clear, Orca believes relevant documents are being improperly withheld. For example, one agreed search term for Wiz's custodians consists of "orca* AND" certain keywords the Parties negotiated to be relevant to the issues in this case. Ex. 1 at 3. After narrowing the keywords to an agreed relevant set, Wiz identified ~35,000 unique responsive ESI documents across custodians (*see* Ex. 1 at 12). Wiz's production to date includes less than 3,000 unique documents for that keyword combination. Wiz refuses to tell Orca how documents with "orca*" and at least one other negotiated keyword are "non-responsive" or irrelevant, let alone ~32,000 such documents. *See CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14-1191, 2019 WL 6527951, at *15 n.15 (S.D. Cal. Dec. 4, 2019) ("documents [that] hit upon the keywords to which the Parties agreed" are "presumptively relevant").

Second, Wiz argued it was permitted to withhold documents because its objections to Orca's original search terms included relevance objections. Those objections were mooted when the parties mutually negotiated a compromised set of search terms. If Wiz believed otherwise, it should have brought this to the Court's attention no later than July 19, 2024. D.I. 106 (extending "Deadline to submit Priority Request Disputes"). Wiz did not, and its after-the-fact objections are waived.

Third, Wiz claims it verbally raised a relevancy/responsiveness review during a meet and confer. That is wrong. Wiz could not identify when this alleged discussion happened, nor identify any correspondence memorializing it. That is telling, as Orca sends Wiz a contemporaneous memorialization of each meet and confer to avoid exactly these types of hindsight disputes. If responsiveness filtering were contemplated, Orca would have ensured that such understanding—which is ripe for disagreement—was expressly set forth in correspondence and the ESI Order. The ESI Order does not permit such filtering because that was not the Parties' agreement. Orca's actions reflect this too. Orca substantially completed its production of responsive non-privileged ESI documents on the Court's deadline. Wiz should be required to do the same.

**Wiz should be ordered to produce relevant documents and communications exchanged with or disclosed to ▬▬▬**: In July 2024, more than a year into this litigation, ▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See, e.g.*, Ex. 5 at 1. Wiz has not produced any documents regarding this ▬▬▬▬▬ which is uniquely relevant to damages as a valuation of the accused product and functionalities, and this litigation. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015) (finding

The Honorable Sherry R. Fallon
October 2, 2024
Page 3

"acquisition costs for technology containing the accused features" relevant to damages). Orca requests Wiz be ordered to produce documents exchanged with or disclosed to ▉ that fall within the scope of relevant, non-privileged information Wiz has already agreed to in response to Orca's RFP Nos. 16-23, 25-27, 38, 44, 49, 57, 68, 73, 95, 135, 154-55, 157, and 159-61. Exs. 6-8.

Wiz takes the position that relevant documents regarding the ▉

▉ Ex. 9 at 1; Ex. 10 ▉ Wiz admits it has withheld all emails with ▉ on this basis. This is improper and no common interest privilege applies.

*10x Genomics, Inc. v. Celsee, Inc.* is instructive. 505 F. Supp. 3d 334, 337-38 (D. Del. 2020). In that case, Celsee entered into an agreement during the litigation to be acquired by non-party Bio-Rad. Celsee refused to produce discovery regarding that acquisition based on the common interest doctrine. The Court disagreed, finding Celsee could not establish "it and Bio-Rad shared an identical legal interest or that its communications with Bio-Rad were made for the purpose of securing, advancing, or supplying legal representation." *Id.* at *338. The Court also found a letter of intent signed by Celsee and Bio-Rad expressly discussing the litigation was insufficient to create a common interest privilege because the LOI "did not consummate Bio-Rad's purchase of Celsee; nor did it result in Bio-Rad's assumption of Celsee's liability for the alleged infringement of the asserted patents or make Bio-Rad responsible for defending Celsee in this litigation." *Id.* The Court compelled Celsee to produce a witness and documents relating to the acquisition. *Id.* at *340.

The same result should follow here. Wiz does not identify any identical legal interest it purports to share with ▉ or contend its communications with ▉ were made to secure, advance, or supply legal representation. Nor could it do so accurately because ▉ ▉ As the Court found in *10X*, communications relating to adversarial M&A transactions are not protected by the common interest doctrine because they do not "advance the common interest privilege's purpose." *Id.* at 340 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). The ▉-▉ like the LOI in *10x*, does not change the analysis. The NDA is not a joint defense agreement and does not mention this or any other litigation. It is a standard NDA between two companies pursuing a potential business transaction, directed to protecting confidential information that may be exchanged. *See generally* Ex. 10. And, importantly, ▉ never consummated a deal, so at all times they were "still competitors ... and do not share an interest sufficiently common to extend the attorney-client privilege to their discussions." *Id.* at 338 n. 1; *see also Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. Sirius XM Radio, Inc.*, C.A. No. 17-184, 2022 WL 4079051, at *3 (D. Del. Sept. 2, 2022) (holding "no common interest privilege applies" between companies that had signed an NDA and were "in discussions about a potential agreement").

**Wiz's deficient production of documents responsive to RFPs 91, 92, 94, and 113:** Wiz should be ordered to produce all documents responsive to Orca's RFPs 91, 92, 94 and 113, which are narrowly tailored. RFPs 91 and 92 are directed specifically to the 2024 RSA Conference held during this litigation (May 6-9, 2024), including documents accessible and shown at the conference from demo.wiz.io and docs.wiz.io, where Wiz demonstrated the accused product and promoted the accused functionalities to over 40,000 attendees. These are post-complaint acts of infringement relevant to Wiz's willfulness and the value of Orca's inventions. Furthermore, Wiz directly put at

issue the accessibility of information from "docs.wiz.io"—which Wiz presented publicly at the RSA conference—by relying on the purported confidentiality of that information as the basis for an alleged unclean hands defense. D.I. 124 at ¶¶ 14, 271-273. Wiz should not be permitted to withhold evidence that refutes its defenses. Request 94 is limited to finance materials and materials presented to investors in connection with a funding round occurring during the pendency of this litigation, relating specifically to the accused product and accused functionalities, which is relevant to "carefully tie proof of damages to the claimed invention's footprint in the marketplace." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Request 113 is limited to a particular type of document—board meetings and minutes—discussing the accused products and functionalities. Wiz has never identified any burden with collecting this targeted information, or even that it has investigated any burden, including for example how many board meetings Orca's request could hit on. Ex. 11 at 1-2.

For each of these requests, Wiz agrees to produce documents only as to Orca or "the specifically accused 'snapshot' functionality as Wiz understands it." Ex. 7. Wiz will not explain what this "understanding" is and refuses to apply Orca's definition of Accused Functionalities or even Wiz's own identification of accused functionalities in its response to Orca's Interrogatory No. 1. Ex. 14 at 2-3 (Orca's definition of Accused Functionalities); *see generally* D.I. 133; *see* D.I. 139 at 2. Wiz also improperly excludes its Runtime Sensor and Supply Chain Security, which the Court expressly found are within the scope of Orca's infringement claims. D.I. 139 at 2-3. On the September 30 meet and confer, Orca proposed as a compromise to limit its request to the specific features identified by Wiz in WIZ_0032973, the document Wiz uses to identify the Accused Functionalities in response to Orca's Interrogatory No. 1. *See* D.I. 139 at 2; D.I. 133-10 at 5-7. Wiz refused. And, tellingly, Wiz has not produced a single document responsive to these RFPs, indicating Wiz has narrowed its request to something where no documents exist. That is improper. All responsive, non-privileged documents should be produced without further delay.

**Wiz's deficient response to Interrogatory No. 15:** Orca's Interrogatory No. 15 seeks information regarding Wiz's access to Orca's confidential and proprietary documents. Wiz has supplemented its response several times to confirm that it illicitly accessed a wide array of Orca's confidential documents, but Wiz refuses to provide certain additional information, including: (1) identifying employees who were exposed to the materials; (2) listing communications with third parties related to such documents; (3) describing Wiz's understanding of the confidentiality and contractual protections for that information; or (4) confirming the scope of Orca documents in Wiz's possession now or in the past. Ex. 12 at 3-7. Tellingly, Orca provided this information in response to Wiz's mirror image Interrogatory No. 12, and Wiz should be ordered to provide a response at least as detailed as Orca's. Ex. 13; D.I. 33 at 4.

\*   \*   \*

In sum, Wiz should be compelled to produce the improperly withheld discovery set forth above by October 16.  Orca also requests that Wiz be ordered to provide dates certain for other productions it has agreed to. For example, in July, Wiz committed to producing *some* documents responsive to Orca's RFP Nos. 91, 92, 94 and 113, but on a September 30 meet and confer, Wiz confirmed it still has not collected or produced any of those materials and will not commit to any date certain for doing so. Ex. 15 at 1-3. Wiz's refusal to provide dates certain for producing agreed-upon documents is a recurring problem that precludes efficient resolution of disputes.

The Honorable Sherry R. Fallon
October 2, 2024
Page 5

                                              Respectfully,

                                              */s/ Rodger D. Smith II*

                                              Rodger D. Smith II (#3778)

Attachments
cc:      All counsel of record (via electronic mail)