## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

ORCA SECURITY LTD.,                    )
                                       )
                    Plaintiff,         )        C.A. No. 23-0758-JLH-SRF
                                       )
        v.                             )        **REDACTED PUBLIC VERSION**
                                       )
                                       )
WIZ, INC.                              )
                                       )
                    Defendants.        )


**LETTER TO THE HONORABLE SHERRY R. FALLON FROM KELLY E. FARNAN
REGARDING RESPONSE TO ORCA'S OCTOBER 2, 2024 LETTER**

<div style="display: flex; justify-content: space-between;">

OF COUNSEL:

Jordan R. Jaffe
Lisa Zang
Catherine Lacy
Callie Davidson
Alex Miller
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Praatika Prasad
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY  10019-6022
(212) 999-5800


Dated: October 3, 2024

</div>

Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 658-6541
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Counsel for Defendant Wiz, Inc.*

Dear Judge Fallon:

**<u>Wiz Produced Responsive Documents As Required by the ESI Order and Agreed by the Parties:</u>**  Orca's position that all documents (and email families) that hit on the parties' search terms must be produced in response to the parties' Priority Requests, regardless of relevance, is untenable in light of the Federal Rules of Civil Procedure, the Orders governing this case, the case law, and the parties' meet and confers regarding the Priority Requests.

Under Rule 26(b)(1), discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Likewise, the Default Standard for Discovery, Including Discovery of Electronically Stored Information ("Default ESI Order"), which is incorporated into the ESI Order in this case (D.I. 71 at 1), is clear that the purpose of ESI discovery is to "identify and produce ***relevant*** information."  Default ESI Order, ¶ 1.b (emphasis added).  The ESI Order itself requires production of only "non-privileged custodial ESI ***responsive*** to the parties' Priority Requests."  D.I. 71 at 6 (emphasis added).  Nowhere does the Order contemplate that ***everything*** that hits on a search term is responsive.

The case law confirms that a "responsive" document is one that is relevant to the issues or defenses of the case at hand and that relevance review of documents that hit on custodial ESI search terms is standard and appropriate. Ex. A, *CMC Materials, LLC v. Dupont De Nemours*, *Inc.*, D.I. 191 (D. Del. Oct. 11, 2023) (J. Hall) (oral order denying plaintiff's request to compel defendant to turn over all search-term-identified documents where defendant "offered plausible evidence that the parties agreed to use search terms to 'locate potentially responsive emails'"); *see also Monolithic Power Sys., Inc. v. Intersil Corp.*, 2018 WL 6077973, at *1 (D. Del. Nov. 19, 2018) (adopting Special master's opinion denying plaintiff's "motion to compel [defendant] to produce all non-privileged e-mail returned by agreed-upon search terms/custodians without conducting a 'relevance review.'"); *Palmer v. Cognizant Tech. Sols. Corp.*, 2021 WL 3145982, at *9 (C.D. Cal. July 9, 2021) (The "Court will not compel defendants to produce any document simply because it contains a search term whether or not it is responsive to the discovery request, or, by extension, whether or not it is relevant and proportional to the needs of the action.").

The only case Orca cites is inapposite.  *CrossFit, Inc. v. Nat'l Strength & Conditioning Association*, 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019).  In that case, hundreds of documents and devices were ***lost***, and the Court found the losing party had "acted with intent to deprive [the other party] of the lost ESI."  *Id.* at *10.  The consideration of these lost documents as presumptively relevant came in the context of determining whether to impose sanctions for spoliation, as the documents could not be reviewed for relevance.  *Id.* at *6.  Despite its misconduct, the defendant was still permitted to review "presumptively relevant" documents that were not destroyed for responsiveness prior to production.  *Id.* at *3.  Wiz, on the other hand, is not "withholding" any relevant, responsive, non-privileged documents.[1]

As Orca acknowledges, Wiz also objected to Orca's Priority Requests on the basis of relevance.  Ex. C; D.I. 155-4 at 2.  Orca's position that all non-privileged hits must be produced would essentially require a party like Wiz to refuse to run ***any*** search terms in order to preserve objections to producing irrelevant documents.  Such a position is impractical, contrary to law, and

---

[1] Orca's attempt to inject irrelevant topics here should not be given any credence.  For example, Orca spills ink on JIRA tickets even though Wiz produced ***all*** non-privileged tickets that hit on Orca's search terms (given the timing under the Court's order).  Ex. B.  Despite having the same amount of time as Wiz, however, Orca has not similarly produced ***any*** JIRA tickets.  Orca should be required to produce all remaining JIRA tickets hitting on Wiz's search terms by October 10.

would frustrate efforts to "reach agreements cooperatively" on search terms to run and review on ESI. Default ESI Order, ¶ 1.a.

In addition, Orca is incorrect that "Wiz claims it verbally raised a relevancy/ responsiveness review during a meet and confer." D.I. 155 at 2. Counsel for **Orca** referred to the parties reviewing documents for relevance in a debate over whether the appropriate numbers to compare for emails were hit counts alone (which Orca contended were the only documents that would need to be reviewed for relevance) or hit counts plus families (which Wiz pointed out would need to be reviewed for privilege). Ex. D, ¶¶ 3-5. That the parties had this debate is reflected in the meet and confer correspondence. *See, e.g.*, D.I. 155-4 at 15 (complaining Wiz did not provide "total hit count excluding family"); *id.* at 9 (noting "as discussed on the previous meet and confer" that hits plus families "is most representative for email given how email families are treated"). The underlying discussion of relevance review was not memorialized *because it was not in dispute*. In accordance with the parties' mutual understanding, Wiz engaged human reviewers to conduct a responsiveness and privilege review of the documents that hit on Orca's proposed search terms[2] on a document-by-document basis. No "filtering" of any sort was used to make responsiveness determinations. Then, in accordance with the parties' contemplated substantial completion deadline, Wiz produced a majority of the non-privileged, responsive documents. Wiz has explained its responsiveness review process to Orca *at least 3 times*.[3] Orca's apparent inability to understand this process is not credible. Wiz also explained to Orca that the remaining documents hit on privilege filters and were being reviewed on a document-by-document basis before production. D.I. 155-2 at 2. As Wiz has repeatedly made clear, Wiz is *not withholding* any non-privileged responsive documents; Wiz expects to produce most, if not all, the remaining documents this week. That Orca ultimately chose to produce a data dump without reviewing the documents in accordance with the ESI Order or the parties' agreement has no bearing on what Wiz should be compelled to do. In fact, Orca's conduct requires Wiz to expend more resources to wade through vast amounts of irrelevant information.

**As to Documents Exchanged With or Disclosed to ▮▮▮▮ What Orca Seeks is Irrelevant and Common Interest Privileged:** The parties have no dispute as to the documents that Wiz has agreed to produce—that is, non-privileged documents that fall within the scope of Wiz's agreement to produce in response to Orca's RFPs. Stated another way, Wiz is not withholding the documents it has already agreed to produce simply because they were exchanged with or disclosed to ▮▮▮▮ D.I. 154-2 at 1; D.I. 155-9 at 1, 13.

Where the dispute arises is in Orca's demand for documents and emails that were exchanged between ▮▮▮▮▮▮ and are *not* independently responsive to Orca's RFPs. In other words, Orca contends—and Wiz disputes—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This cannot be. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

More fundamentally, what Orca seeks falls outside Wiz's ability to produce without breaking the common interest privilege. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Wiz did not review or produce documents that hit on Orca's "cloud native" search term because, as this Court recognized, the term is entirely improper. D.I. 139 at 4.

[3] Orca's claim that Wiz was "unprepared" to discuss the ESI issue for "three weeks" is disingenuous. Wiz provided times to discuss but it was Orca that ignored these times and instead insisted on raising this issue when it was not on the discussion agenda. D.I. 155-3 at 3, 4-5.

██████████████████████████████████████████████████████████

At Orca's request, Wiz promptly provided a copy of the NDA after satisfying its notice and disclosure obligations. The NDA states that ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████.

Orca should have realized, upon receiving a copy of the NDA on September 17, 2024, t██ ████████████████████████████████████████ ████████████████████████████ Both are protected by the common interest privilege. Wiz did not hear back from Orca until the September 30 meet and confer, when it became clear that Orca had not reviewed the NDA.

████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ Orca has cited ***no case*** supporting such discovery, including potentially reaching into discussions purely between lawyers. ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████.

The cases Orca cites here are inapposite. *Finjan v. Blue Coat Systems, Inc.* dealt with a motion to strike revenue and prices specifically for "technology containing the accused features," ████████████████████████████████████████ 2015 WL 4129193, at \*4 (N.D. Cal. July 8, 2015). *10x Genomics, Inc. v. Celsee, Inc.* contemplated the common interest privilege where the subject letter "was not a joint defense letter" but, rather, "a nonbinding expression of the parties' intent to consummate a stock acquisition." 505 F. Supp. 3d 334, 337-38 (D. Del. 2020). And, *Fraunhofer-Gesellschaft Zur Forderung Der Angewandten Forschung E.V. v. Sirius XM Radio* featured a standard NDA for discussions about a potential agreement ***without any obligations***. 2022 WL 20806272, at \*4 (D. Del. June 28, 2022).

The Court should deny Orca's unprecedented request for irrelevant, common interest privileged materials ████████████████████████████████████.

**Wiz Agreed to Produce Documents Relating to the Accused Functionalities for Orca's RFP Nos. 91, 92, 94, and 113, and All Else Sought by Orca is Irrelevant:** Orca has once again propounded overbroad RFPs untethered to this case or any party's allegations. D.I. 62; D.I. 139 (denying overbroad discovery). This includes asking for "all" documents related to Wiz's Series E financing round (RFP No. 94), "all" documents related to the 2024 RSA Conference (RFP Nos. 91, 92), and all presentations to the board of directors (RFP No. 113). Ex. E at 5-6, 2, 3, 25. Wiz has repeatedly explained why these types of requests are improper in this patent infringement

action.  Still, in an effort to reach agreement on this issue, Wiz agreed to produce documents related to the accused "snapshot" functionality[4] for each of these RFPs, because that functionality is the basis of Orca's claims.[5]  *Id.* at 3, 4, 6, 26.  Wiz has made clear that it is receptive to Orca's requests for additional information provided those are reasonable.  D.I. 154-5 at 8-9.  For example, just recently, Wiz agreed to produce responsive documents related to the Supply Chain and Runtime Sensor functionalities even though it maintains that agent-based technology like the Runtime Sensor is not responsive.  D.I.154-2 at 3.  Orca is still not satisfied and thus must face the overbreadth and lack of proportionality in its requests as stated.

Each of these RFPs as stated are grossly overbroad. Orca fails to explain why "all" documents related to the 2024 RSA Conference or Wiz's Series E financing round are relevant or proportional to the needs of this case.  All documents regarding funding round materials are not needed to establish damages, because, as Orca's single cited case confirms, Wiz's total value is not sufficiently tied to the Asserted Patents to be the basis of any damages calculation.[6]  D.I.155 at 4.  RFP 113's request for board minutes related to the accused products is also overbroad because Orca contends Wiz has only one product, so it effectively asks for information about *every* board meeting Wiz has ever had.  Orca has not provided authority to include irrelevant board meeting minutes in a patent case.  Regarding RFP Nos. 91 and 92, even if certain documents were made publicly available two years after Orca illicitly obtained them (D.I. 124, ¶ 14), that would have no bearing on Wiz's unclean hands defense.

Finally, Orca's "compromise" is not a compromise at all.  WIZ_0032970 identifies *all* of Wiz's product features.  D.I. 133-10.  As this Court has twice previously recognized, Orca has not shown that every document within Wiz is relevant to the asserted patents in this case.  D.I. 62, D.I. 139.  Orca's third attempt should similarly be rejected.

**<u>Wiz's Response to Orca's Interrogatory No. 15 is Not Deficient</u>:**  As Orca recognizes, Wiz has supplemented its response to Interrogatory No. 15 four times to provide all the information Orca specifically requested from Wiz.  Wiz has identified the specific Orca documents it had access to, the dates of first access to those documents, how access was received (■■■■■■■■■■■■), which Wiz employee first received access, and details about the revocation of such access.  D.I. 155-12 at 41-45.  And while Orca demands that Wiz identify every Wiz employee that accessed the information because Wiz's Interrogatory No. 12 requests that information, *Orca's* interrogatory does not ask for the same information.  Orca's interrogatory also does not request confirmation of the scope of documents in Wiz's possession.  There is no basis for Orca to demand that Wiz provide information not sought by its interrogatory.

<div align="center">* * *</div>

In light of the above, Wiz respectfully requests that this Court deny Orca's requests.

---

[4] Orca now asserts that it does not understand what the accused "snapshot" functionality is.  This is not believable, given that it is Orca that brought this lawsuit and provided infringement contentions.  For the avoidance of doubt, the accused "snapshot" functionality means any calls made by Wiz to a cloud service provider's API that returns a snapshot or a location of a snapshot, whether the snapshot already existed or was generated as a result of the API call.

[5] Wiz will produce non-privileged, responsive documents as agreed by the end of this week.

[6] *ResQNet.com, Inc. v. Lansa, Inc.* does not discuss documents presented to investors; rather, its holding goes against Orca's broad request.  594 F.3d 860, 869 (Fed. Cir. 2010) (finding damages model does connect proposed royalty with value of patented method).

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4355)

cc:    Counsel of Record (by e-mail)

5